[No. 3317. Decided April 18, 1901.]

E. H. WATKINS *et al.*, *Appellants*, v. THOMAS DORRIS *et al.*, *Respondents.*

INJUNCTION — WRONGFUL ISSUANCE OF TEMPORARY INJUNCTION —DIS-
SOLUTION ON FINAL HEARING — NO REMEDY BY APPEAL.

The action of the court in granting and continuing a tem-
porary injunction pending the final disposition of an action can-
not be reviewed on appeal, where the temporary injunction was
dissolved on final hearing, but the remedy of defendant, if in-
jured by its wrongful issuance, is by suit upon the injunction
bond.

NON-NAVIGABLE STREAMS — WHEN PUBLIC HIGHWAYS — FLOATABIL-
ITY FOR LOGS.

A stream eighteen miles long, with an average width of one
hundred feet and depth of three feet, which can, during annually
recurring freshets, be used profitably for the floating of logs to
market, must be held to be a public highway for the purpose of
floating logs and timber products, within the contemplation of
Bal. Code, §§ 4378-4386, which provide that, for the purpose of
booming and floating logs and timber products, all navigable
waters in the state shall be deemed public highways.

SAME — PERSONS ENTITLED TO USER.

The statutes of this state which declare non-navigable streams
upon which logs can be made floatable public highways and au-
thorizing their use as such by corporations organized for boom-
ing and floating logs, must be held as conferring the same rights
upon individuals.

SAME — OWNERSHIP OF BED OF STREAMS.

Art. 17, § 1, of the constitution, which reserves title to the
state in the beds of all navigable streams below the line of ordi-
nary high water mark, has reference only to such streams as
are navigable for general commercial purposes, and not to those
which are public highways merely for the floating of logs and
timber products.

SAME — RIGHTS OF RIPARIAN OWNER.

Although a non-navigable stream upon which logs are float-
able may be a public highway so far as the floating of logs is
concerned, persons or corporations using it for that purpose have
no right to interfere with the bed of the stream, or with its

banks, for the purpose of removing obstructions, without the riparian owner's consent, or the exercise of the right of eminent domain, where title to the bed of the stream is in such riparian owner.

SAME — DAMAGES AS RESULT OF LOG JAM.

A riparian owner upon the banks of a stream which is navigable only for logs in time of freshets, is entitled to damages, where his lands become overflowed by reason of the formation of a jam in the stream due to the negligence of parties floating logs therein.

Appeal from Superior Court, Wahkiakum County.— Hon. HENRY S. ELLIOTT, Judge. Affirmed.

*J. Bruce Polwarth* and *George Noland,* for appellants.

*Sol. Smith,* for respondents.

PER CURIAM.—This action was instituted by appellants, who compose a partnership doing a logging business under the firm name of the Elochoman Logging Company, in the county of Wahkiakum, state of Washington. Appellants are the owners of certain timber lands situate upon and adjacent to the stream named and designated as the Elochoman river, or Elochoman creek, and have for some time been engaged in cutting and removing from said premises the merchantable spruce and fir timber thereon, and by means of said stream have been transporting the sawlogs cut from said timber to tide water, for the purpose of booming and rafting the same there for transportation to the market. The action was brought against Thomas Dorris and William Dorris, respondents here; and said Thomas Dorris is also an appellant. Said Thomas Dorris is the owner of certain other lands lying upon both sides of said stream and below the lands of appellants, the Elochoman Logging Company. During the month of November, 1897, the said logging company, having theretofore placed about fifteen hundred logs in said stream, undertook to run the

same down the stream where it passes through the lands of said Thomas Dorris. At a point in said stream where it passes through the lands of said Thomas Dorris is a large rock, so situated and embedded that, when said appellants' logs were carried down by a freshet then occurring, their passage was obstructed by said rock, a jam was formed, and the waters of the stream were thereby backed and caused to overflow the lands of said Thomas Dorris. The said appellants then sought to break said jam, and alleged in their complaint that the only way of approaching thereto was from the banks of said stream, over the lands of the respondent Dorris, and that said respondents prevented the appellants from making such approach and from entering upon said lands for said purpose, and had threatened appellants with personal violence if they should undertake to go upon said lands for said purpose. They further alleged that the force of the water at said point was insufficient to break said jam, and that it could only be done by men aided by steam or horse power operated upon the banks of said stream, on the lands of the said respondent. They also alleged that the value of the logs held by said jam was $8,000, and that they had been damaged in the sum of $2,000 by the conduct of the Dorrises in preventing them from going upon said lands to break said jam, and prayed judgment for said sum, and also prayed for a temporary restraining order preventing the respondents from in any manner interfering with the appellants' entering upon the banks of said stream for the purpose of breaking said jam, and also preventing them from interfering with the removal of the rocks from the bed of the stream which were obstructions to the passage of said logs. Upon the showing made, the court granted the temporary restraining order, without notice, and fixed a date in the order when respondents should, after notice, show cause

why a temporary injunction should not issue pending the final hearing of the cause. A hearing was had at said time, and the court continued the temporary injunction until the final hearing of the cause. Assignments of error are urged by the appellant Thomas Dorris as to the course of the court at the time of the hearing when the temporary injunction was continued, but, in view of the subsequent history of this case, we do not deem it necessary to discuss them here, as will appear later in the course of this opinion. Thereafter the respondents answered the complaint, and admitted the fact that the log jam existed, but alleged that the same was caused by the insufficient capacity of said stream to float logs, and by the mismanagement and unskillful manner of appellants in driving said logs, together with their gross negligence and want of care and utter indifference to the injury resulting therefrom. They deny that said rock was in the bed of the stream, and aver that it was then, and for many years theretofore had been, embedded in and formed a part of the west bank of said stream, where it was a valuable protection to the bank of the stream, and also formed a portion of the fence inclosing the cultivated lands of said Thomas Dorris, and was situated upon his land, and formed a part thereof. The respondent Thomas Dorris alleges that he is the sole owner of said land; that said stream is not a meandered stream or a public highway, and is not navigable where it flows through the said lands; that the said stream was duly surveyed and disposed of by the United States, long before the state of Washington was admitted into the Union, under and by virtue of the land laws of the United States, and is a private stream not of sufficient size and volume at any stage of the water, in its natural state, to be of public utility, or to float sawlogs to market, when it flows through the lands of said Thomas Dorris, or above

said lands, but is a short mountain creek, depending upon the rainfall for the volume of its waters. The reply puts in issue the material averments of the answer. At the trial of the cause a large number of witnesses were examined. The statement of facts filed in this court contains more than four hundred pages of transcribed testimony. As an advisory matter, the court submitted to the jury the questions of fact propounded by the interrogatories hereinafter set forth, and after due deliberation the jury returned their answers thereto as severally set forth below. The said interrogatories and answers are, respectively, as follows, to-wit:

"1. Is the Elochoman river, above the lands of Thomas Dorris, a highway suitable for the running of logs? Answer: Yes.

"2. Have the lands of Thomas Dorris been injured by the jam of November, 1897? Answer: Yes.

"3. Was that jam the result of the want of ordinary care and prudence on the part of the plaintiffs? Answer: Yes.

"4. What amount of land was damaged, and what is the value thereof? Answer: 2.62½ acres; $168.75.

"5. Did the defendant Thomas Dorris refuse at any time before the jam was broken to allow the plaintiffs or their agents to enter upon and break said jam, and, if so, what was the extent and value of the land damaged at the time of such refusal? Answer: No."

Assignments of error as to the court's instructions to the jury are urged by counsel upon both sides, but we think the instructions substantially embody the law of the case. The court followed the findings of the jury upon the facts submitted to them, and thereafter, with other findings, entered the following findings of facts:

"3. That the Elochoman creek is about 18 miles in length, and empties into the Columbia river; that it has an average width of 100 feet, and a depth of about three feet; that in its normal capacity it cannot be used for the

floating of logs, but that there are annually recurring freshets of sufficient duration and with a sufficient volume of water to render said creek capable of being used profitably for the floating of logs to the Columbia river to market; that said creek has been so profitably used for a period covering the last twenty-five years. .

"4.    That the said Elochoman creek is an unmeandered stream unaffected by the rise and fall of the tide, save only for a short distance above the point where it empties into the Columbia river, and below the lands of said Thomas Dorris.

"5.    That the lands of plaintiff hereinbefore described are chiefly valuable for their timber, and that there is no other outlet to market, except by means of said Elochoman creek, where the same flows through the lands of said Thomas Dorris.

"6.    That, in addition to the lands of plaintiffs, there are large bodies of timber adjacent to said Elochoman creek, which are heavily timbered, and that the timber thereon can not be conveyed to market except by means of said creek.

"7.    That during the early part of November, 1897, the plaintiffs, having theretofore placed in said creek a large number of logs, to-wit, to the number of about 1,500, undertook, during a freshet, to run said logs down said Elochoman creek, where the same passes through the lands of said Thomas Dorris.

"8.    That at the time the plaintiffs so undertook to run said logs there was upon the banks of said stream, adjacent to and forming a part of the bank of said stream where the same passes through the land of said Thomas Dorris, a large rock, which had theretofore been embedded in the bank, but which during frequent freshets had partially washed out from the bank; that said rock was so situated at the time said logs were run that the accumulation there at any one time during a freshet, of a great volume of logs, would result in a jam, and the consequent spreading out of the water upon the neighboring lands, with damage resulting therefrom; that the fact that the above described rock was situated as aforesaid, and that the floating of a

41-24 WASH.

large number of logs thereupon would result in the forma-
tion of a jam, was well known to plaintiffs before the
running of said logs aforesaid.

"9.   That during the early part of the said month of
November, 1897, the said plaintiffs caused to be turned
loose in said creek, at a point above the lands of said
Thomas Dorris, about 1,500 sawlogs, many of them of
considerable size and length, which said logs were, by the
freshet then occurring, carried down to the said rock,
situated on the lands of Thomas Dorris; that there a jam
was formed and the waters of said creek were backed and
caused to overflow upon the lands of Thomas Dorris, oc-
casioning damage thereto in the sum of $166.75.

"10.   That the said damage as aforesaid resulted from
the carelessness and negligence of the plaintiffs."

Upon the facts as found the following conclusions of
law were entered:

"1.   That the Elochoman creek, from the point where
the same empties into the Columbia river, up to the lands
of plaintiffs, is navigable for logs at sufficiently regularly
recurring periods and for sufficient lengths of time to en-
able the same to be used profitably for the floating of saw-
logs to market.

"2.   That the public have a right to the use of said
stream for the purpose of floating sawlogs and other prod-
ucts of the forest to market, provided that said use be ex-
ercised with such reasonable care as will not endanger the
property of the riparian proprietors.

"3.   That the plaintiffs are indebted to the defendant
Thomas Dorris in the sum of $166.75, his damages so as
aforesaid sustained."

It is contended that some of the important findings are
not justified by the evidence, but an examination of the
evidence convinces us that there was evidence upon which
to found the findings; and, since the trial court heard all
the evidence, we believe he is better qualified than this
court to pass upon its weight and credibility.   We find
no error in the conclusions of law.

Decree was entered, in accordance with the findings and conclusions, that the Elochoman creek, from the point where it empties into the Columbia river up to and through the lands of Thomas Dorris, and up to and through the lands of plaintiffs, is navigable for logs and other products of the forest; that the public have a right to use said Elochoman creek for the purpose of floating sawlogs and other products of the forest to market, provided that said use be exercised with such reasonable care as will not endanger the property of riparian proprietors. The said Thomas Dorris was awarded damages in the sum of $166.75, together with his costs, and said William Dorris was awarded his costs. The temporary injunction theretofore issued against Thomas Dorris and William Dorris was dissolved.

The complaint of Thomas Dorris, on his appeal, that the court erred in the matter of granting and continuing the temporary injunction heretofore referred to in this opinion, we think, calls for no consideration here. If the court below committed error, this court cannot now reverse its proceedings in the matter of the temporary injunction, for the reason that any such error was corrected by the court itself when it dissolved the temporary injunction at the final hearing. If harm occurred by reason of the temporary injunction, the remedy is now by suit upon the injunction bond for wrongfully suing out the injunction.

The real question to be determined upon the merits is, What are the respective rights of the land owner and the log driver upon a stream of the character of Elochoman creek? The act of March 17, 1890 (Session Laws of 1889-90, p. 470; Bal. Code, §§ 4378-4386, inclusive), defines the powers and duties of corporations organized for the purpose of building booms and catching logs and timber products therein. Section 9 of said act provides:

"All meandered rivers, meandered sloughs and navigable waters in this state shall be deemed as public highways, and said corporations shall be declared public corporations for the purpose of this act; and the improvement of such streams, sloughs and waters shall be deemed and declared a public use and benefit."

Under this section all *"meandered rivers and meandered sloughs"* shall be deemed as public highways for the purposes specified in the act, viz., booming and floating logs and timber. Nothing further is needed to establish them as such public highways, when it is shown that they are meandered. The section further provides that all *"navigable waters"* shall be deemed as public highways for the same purpose. If the stream is not meandered, it must then be determined whether it is or is not navigable in fact for floating logs or timber. If navigable for such purpose, it is a public highway for that purpose. The court finds Elochoman creek to be a short stream, eighteen miles in length, with an average width of one hundred feet, and a depth of about three feet, and that the stream can, during annually recurring freshets, be used profitably for the floating of logs to the Columbia river to market, and that it has been so profitably used for the last twenty-five years. The stream must therefore be held to be a public highway for the purpose of floating logs and timber to market. Being a public highway for such purpose, what are the relations of the land owner to the stream? Thomas Dorris is the owner of the land on both sides of the stream. If such a stream as this is included in the provisions of § 1, art. 17, of the constitution of Washington, then the state is the owner of the bed of the stream below ordinary high water mark. We do not believe, however, that the said constitutional provision was intended to include streams of the character of this one, but only such as are navigable for general commercial purposes. This stream

is of such a character that its use as a public highway is restricted to one purpose, viz., that the floating logs or timber; and we think a distinction must be drawn between such streams and those which are highways for general trade and commerce. The title to the bed of the stream, therefore, passed from the government to the land owner, but it is subject to the right of the public to use the stream for floating logs and timber. This right is further given by virtue of the act of 1890 aforesaid to corporations, under conditions therein contained. Again, the same right is continued with further provisions under the act of March 18, 1895 (Session Laws 1895, p. 128; Bal. Code, §§ 4387-4394). These provisions have been held constitutional by this court in *East Hoquiam Boom & Logging Co. v. Neeson,* 20 Wash. 142 (54 Pac. 1001). With this right given to a corporation to use the stream as a public highway, there is no reason, in principle, why an individual or partnership, as in this case, may not use it as such. Indeed, if a corporation only could so use the stream, the act would be of doubtful force, because of its discrimination. The statute provides how such corporations may improve the stream, by removing obstructions, and they may also become common carriers to drive all the logs delivered into their charge, and may collect toll therefor. But the right of individuals or partnerships to use the stream as a highway cannot be denied. But neither such corporation nor individuals can interfere with the soil in a stream of the character of Elochoman creek, the bed of which is owned by the land owner, without the land owner's consent, or, by operation of law, with due compensation made. The same reasoning applies with even greater force to the use of the banks of the stream, as was sought to be done in this case. *Lownsdale v. Gray's Harbor Boom Co.,* 21 Wash. 542, 547 (58 Pac. 663).

Appellants, therefore, have the right to drive their logs down the stream as long as they do so without damage to the land owner. But, if the use of the freehold or shore rights are required, they must acquire them, either as individuals, or by condemnation in a corporate capacity, as provided by the statutes above mentioned. It having been found that the jam was caused by the appellants' careless manner of driving the logs, the consequent damage to the land is chargeable to them; and, since we find no substantial error in the record, the judgment is affirmed.