[No. 4913.   Decided March 11, 1904.]

W. A. Dawson *et al., Respondents,* v. J. B. McMillan *et al., Appellants.*[1]

WATERS—NAVIGABILITY—SUFFICIENCY OF EVIDENCE.   A channel in a slough forming an arm of Puget Sound, which, while the tide ebbs and flows therein, is used as a public highway for boats and for rafting and towing logs, is navigable water, since it is navigable in a legal sense if it is in fact, although it may not be navigable at low tide.

SAME—BED OF NAVIGABLE WATERS—SALE BY STATE—OBSTRUCTIONS BY PURCHASER.   The sale of tide lands by the state is subject to the paramount right of the public in the navigable waters thereon, and confers no right to obstruct navigation therein.

SAME—PUBLIC NUISANCE—OBSTRUCTION TO NAVIGATION—WHO MAY MAINTAIN ACTION—PARTIES SPECIALLY INJURED.   Owners of timbered lands whose only means of getting logs to market is by the use of certain navigable waters, are specially damaged by an obstruction of the same which prohibits such use of the waters, and may maintain an action to enjoin such obstruction as a public nuisance.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered March 26, 1903, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, restraining the obstruction of navigation.   Affirmed.

*Elihu R. Sherman* and *C. H. Hurlbut,* for appellants.

*T. E. Cade* and *Smith & Brawley,* for respondents.

MOUNT, J.—Plaintiffs brought this action for an injunction restraining defendants from obstructing navigation in the branch of the sea known as McElroy's slough, and for a mandate requiring the removal of such obstruction already made by defendants.   After issues joined

[1]Reported in 75 Pac. 807.

and a trial had, the lower court granted the relief prayed for. The defendants appeal.

No question is made here on the findings of the lower court, and they are therefore to be taken as true. They are as follows:

"(1) That at all of the times in plaintiffs' complaint mentioned and hereinafter mentioned, the plaintiffs have been and are now copartners doing business under the firm name and style of W. A. Dawson & Co.; that during said times the said defendant Union Boom Company has been and now is a corporation duly organized and existing under and by virtue of the laws of the state of Washington, having its principal place of business at Fairhaven, Whatcom County, Washington, and that during said times the defendants J. B. McMillan and Frances C. McMillan have been and now are husband and wife.

"(2) That plaintiffs are the owners of a large quantity of timber lands lying along and adjacent to a certain slough in Skagit county, Washington, commonly called 'McElroy's slough,' which said slough enters into Bellingham Bay, the same being an arm of Puget Sound, which said slough so enters said Bellingham Bay west of lots 1 and 2 in Sec. 21, Tp. 36, north, range 3 east of the Willamette Meridian, in said Skagit county, and which said slough extends back in length about four miles from the mouth of said slough through sections 21 and 22; and that there is a channel, the same being well defined and about three to four feet in depth, extending from the mouth of said slough out into said Bellingham Bay for a distance of one and one-half miles; that said channel is from 70 to 100 feet in width, and that down this channel there is constantly flowing a channel of fresh water averaging during the year from 4 to 24 inches in depth at the deepest, and from 20½ feet to 40 feet in width; that twice each day the tide ebbs and flows up said channel and slough and over portions of the tide flats to a depth of from 7 to 9 feet, and which tide covers all the flats surrounding said slough; that, while the said tide is in, and while so flowing and ebbing, the said channel and slough

is navigable, and has been and can be used as a public highway for boats, scows, and other ordinary modes of water transportation for general commercial purposes, and especially for the rafting, booming, and floating, and towing logs up and down the same; that said slough has been so used for at least twenty years prior to the time of the commission of the acts complained of by plaintiffs in their complaint.

"(3) That sufficient fresh water does not flow down said slough at any time to keep it navigable or floatable with the fresh water alone, but that said slough is only navigable and floatable with the aid of the salt water, and that at ordinary low tide there is no salt water in said slough.

"(4) That the plaintiffs, at and for two years prior to the commencement of this action, were engaged in logging off their said lands, which lands are adjacent to said slough, and that they have been taking the timber from said land, placing the same in said slough, there rafting and placing them in sections ready for market, in the usual manner practiced by loggers, and towing the same down said slough and into said Bellingham Bay, and thence to market; that plaintiffs have no other feasible or practicable way by which the plaintiffs can convey their said timber to the market only down said slough and channel; and that plaintiffs are the owners of a large quantity of standing timber, to wit, about 4,000,000 feet, on their lands, for which there is no other outlet or way to market, save and except down said slough and channel.

"(5) That on or about the 11th day of February, 1903, the defendants Union Boom Company and J. B. McMillan procured a pile driver and piles, and, with the aid of such pile driver and piles, they drove piles in the said channel as shown by the plaintiffs' exhibit No. 1, to wit, a row of piles along the south bank of said channel, and other piles in the center of said channel, which piling, so driven by defendants, were driven into the ground permanently and is a permanent obstruction to navigation of said slough and channel, and deprives plaintiff of the use of said slough and channel for the purpose of towing

their logs down the same to market, and hinders and destroys navigation in said slough and channel; and that, by reason of the location and manner in which said piles were so driven in the bed of said slough and channel, hereinbefore described, the said plaintiffs have been, and now are, unable to get any of their said logs to market; and that, if the said piling are allowed to remain there, plaintiffs will be unable to, and will be prohibited from logging off their said lands or to remove the products of said lands and timber to market; and that it will be impossible for boats to navigate said slough.

"(6) That some time during the year 1902, and prior to the driving of said piles into said slough by defendants, as aforesaid, a line of railway was constructed a few feet east of where said piles were so driven, and a railway bridge was constructed across said slough; that the piles which are in the fresh water channel, and nearest said bridge, are opposite the bents of said bridge; and that any logs or other timber products, boats, and scows that can go under the said railway bridge can float down the fresh water channel of said slough without obstruction on account of the piles driven by defendants; that the openings under the railroad bridge, through which the fresh water flows down through said slough, are 21 feet and 15 feet in width.

"(7) That, prior to the erection and construction of said railway bridge, the plaintiffs, and other persons along said slough, rafted their said logs and placed them into sections ready for market a considerable distance above said bridge, and where said slough is of considerably greater width than where said bridge is erected; that, after the erection of said bridge, and prior to the 11th day of February, 1903, the said plaintiffs and said other persons so rafted their said logs immediately below said bridge; and that steamboats and tugboats would come up said slough and tow said logs in rafts and booms to market; that, prior to the erection of said bridge, said boats navigated said slough above said bridge, and for considerable distance above the same; that the piling driven by defendants extend from the bridge and down

said slough for a distance of 900 feet and that beyond such piling it is unsafe and impracticable to raft and boom logs; that it is impossible for boats to go up said slough and take said logs down the same, and it is impossible to pass logs down said slough in rafts and booms on account of said piling.

"(8) That the defendant Union Boom Company has a contract with the State of Washington for the purchase of all of the second class tide lands in front of said lots 1 and 2; that said contract was duly issued and is still in force; that the meander line runs some distance east of the piles in question, and directly across said McElroy's slough about 100 feet east of the railroad; that said tide lands contract purported to convey to said defendant Union Boom Company all second class tide lands in front of, adjacent to, and abutting upon, said meander line, and that all of the piles in question are outside of said meander line and within the boundaries of said contract.

"(9) That none of the piles in question were driven for the personal use or benefit of the defendant J. B. McMillan, but they were driven under his direction as manager of the defendant Union Boom Company; that the location of the meander line across said McElroy's slough is shown in defendant's Exhibit A; that said piles were being driven by said Union Boom Company for a boom.

"(10) That the defendant Frances C. McMillan had nothing to do with and was not interested in the driving of said piles."

The conclusions are as follows:

"(1) That this action should be dismissed as to the defendant Frances C. McMillan. (2) That the plaintiffs are entitled to an order of this court forever restraining and enjoining the defendants J. B. McMillan and Union Boom Company and each of them, their officers, agents, servants, and employees, from driving piling or placing any other obstruction within the bed or channel of said McElroy's slough, as described in plaintiffs' complaint, or in the channel thereof where the same passes over and extends across the tide lands between the mouth of said

McElroy's slough out to the deep water of Bellingham Bay. (3) That the plaintiffs are entitled to a mandatory injunction compelling the said defendants to remove all piling placed by them or their agents, servants, officers, or employees, in the said channel of said slough, as aforesaid, so that the said plaintiffs may have free and uninterrupted use of said slough for the purpose of ordinary navigation. (4) That plaintiffs should have judgment for their costs and disbursements herein."

Appellants excepted to the second, third, and fourth conclusions; and argue, (1) that the channel of the slough is not navigable under the law; (2) that if it is navigable, it is under the control, disposition, and authority of the state; (3) that the action is prematurely brought, and under improper allegations.

The channel of the slough in question is navigable in a *legal* sense if it is in *fact* navigable. 21 Am. & Eng. Enc. Law (2d ed.), pp. 426, 429; *East Hoquiam Boom Co. v. Neeson*, 20 Wash. 142, 54 Pac. 1001; *Griffith v. Holman*, 23 Wash. 347, 63 Pac. 239, 54 L. R. A. 178, 83 Am. St. 821; *Watkins v. Dorris*, 24 Wash. 636, 64 Pac. 840, 54 L. R. A. 199. In the second finding of fact the court found that the tide ebbs and flows in the slough twice each day, and that "while so flowing and ebbing the said channel and slough is navigable, and has been and can be used as a public highway for boats, scows, and other ordinary modes of water transportation for general commercial purposes, and especially for rafting, booming, and floating, and towing of logs up and down the same; that said slough has been so used for at least twenty years." This finding, which we must take as an admitted fact in the case, precludes any question of the navigability of the slough.

Being navigable water, when the state sold the bed

thereof to the appellants, as stated in the finding No.
8, appellants took the title subject to the paramount right
of the public to use the same for navigation. *Watkins
v. Dorris, supra,* p. 644; *New Whatcom v. Fairhaven
Land Co.,* 24 Wash. 493, 64 Pac. 735, 54 L. R. A. 190.
The fact, therefore, that the title of the bed of the channel,
or the land upon which an obstruction is placed, is vested
in the appellants, does not confer upon them the right
to obstruct navigation upon navigable water. It is no
doubt true that the sovereign authority may control and
regulate the use of navigable waters, but it does not fol-
low that an individual, over whose lands such waters flow,
may do the same. *People v. St. Louis,* 5 Gilm. (Ill.)
351, 48 Am. Dec. 339. By the mere act of selling the
land to the appellants, the state conferred no right upon
them to interfere with the rights of the public in the
use of the highway.

Appellants' last position is based upon the claim that
the United States is the only party having a right to pre-
vent the obstruction, and that respondents are not injured
until they are denied free passage. It has been frequently
held by this court that, where, by a public nuisance, a pri-
vate party is specially damaged, his damage differing in
kind and degree from that of the general public, he may
maintain an action to abate such nuisance. *Carl v. West
Aberdeen Land Co.,* 13 Wash. 616, 43 Pac. 890; *Smith v.
Mitchell,* 21 Wash. 536, 58 Pac. 667, 75 Am. St. 858;
*Griffith v. Holman,* 23 Wash. 347, 63 Pac. 239, 54 L. R. A.
178, 83 Am. St. 821; *Sultan W. & P. Co. v. Weyerhauser
Timber Co.,* 31 Wash. 558, 72 Pac. 114; 21 Am. & Eng.
Enc. Law (2d ed.), p. 444. By findings Nos. 4, 5, and 7,
it is shown that respondents are specially damaged, and
also that the obstruction exists, and that respondents are

prohibited from using the highway and from removing their timber products to market.

The relief granted was, therefore, proper under the findings, and the judgment is affirmed.

HADLEY, ANDERS, and DUNBAR, JJ., concur.