[No. 4846. Decided July 26, 1904.]

MONROE MILL COMPANY, *Respondent, v.* GEORGE MENZEL, *Appellant.*[1]

| 35 | 487 |
| 35 | 667 |
| 35 | 487 |
| 36 | 210 |
| 35 | 487 |
| d37 | 170 |
| 35 | 487 |
| f39 | 16 |
| f39 | 17 |
| 35 | 487 |
| 42 | 48 |

WATERS—STREAM NAVIGABLE FOR SHINGLE BOLTS—PLEADINGS—
COMPLAINT TO ENJOIN OBSTRUCTION — AVERMENTS NOT INCONSIST-
ENT.    An averment in a complaint that a stream is navigable for
shingle bolts is not negatived by another averment that plaintiff
had constructed a dam for the purpose of furnishing a sufficient
supply of water to conveniently and rapidly float shingle bolts
and other timber products down said stream; and it was not
error to admit evidence supporting such a complaint.

SAME—RIPARIAN RIGHTS—ACQUIESCENCE IN UNLAWFUL USE OF
STREAM—ESTOPPEL—PLEADINGS—SUFFICIENCY OF COMPLAINT.  Aver-
ments in a complaint that plaintiff cleared a stream of obstruc-
tions on defendant's land, in order to facilitate the floating of
shingle bolts, that defendant acquiesced therein, assisted in clean-
ing out such obstructions, and thereafter used the benefits there-
from and the flow of water as furnished by a dam constructed
by plaintiff for a period of two years, are not sufficient to plead
an estoppel against defendant's objecting to the interference by
plaintiff with the natural flow of the stream; but such failure to
show an estoppel does not defeat the plaintiff's action for an in-
junction, where by other averments it appears that the stream is
navigable and defendant threatens to obstruct the same.

SAME—NAVIGABILITY OF STREAM—FRESHETS—LOWER RIPARIAN
RIGHTS.    A stream which in its natural state is capable of float-
ing shingle bolts after heavy rains and during freshets which
occur with periodic regularity in the spring and fall of each year,
without the storage of water by a dam, is a navigable stream for
that purpose, and plaintiff is entitled to use it as such across the
lands of a lower riparian proprietor, and interference with such
right will be enjoined.

SAME — OBSTRUCTIONS — DETENTION AND RELEASE OF WATER —
OVERFLOW.    The maintenance of a dam and the detention of the
water in a stream which is navigable for the purpose of floating
shingle bolts, and the release of the water at irregular intervals,

[1]Reported in 77 Pac. 813.

causing the stream to overflow and wash the lands of a lower riparian proprietor, and obstructing his navigation thereof, is such an interference with the natural flow of the water as will be enjoined.

SAME—RIGHT TO BANKS OF UNMEANDERED STREAM. One who makes use of an unmeandered stream for driving timber is not entitled to go upon the banks of a riparian owner unless the land owner consents, or until the right to their use has been acquired in a lawful way.

Appeal from a judgment of the superior court for Snohomish county, entered May 2, 1903, upon findings in favor of the plaintiff after a trial on the merits before the court without a jury, enjoining interference with plaintiff's use of a stream for the purpose of floating shingle bolts. Reversed.

*Coleman & Fogarty,* for appellants. Waters which can be made navigable only by artificial means are not public highways. 21 Am. & Eng. Enc. Law (2d ed.), 428; Gould, Waters (3d ed.), §§ 108, 109; *Morgan v. King,* 35 N. Y. 453, 91 Am. Dec. 58; *Thunder Bay etc. Co. v. Speechly,* 31 Mich. 336, 18 Am. Rep. 184; *Wadsworth v. Smith,* 11 Me. 278, 26 Am. Dec. 525; *Moore v. Sanborne,* 2 Mich. 519, 59 Am. Dec. 209; *Treat v. Lord,* 42 Me. 552, 66 Am. Dec. 298; *Pearson v. Rolfe,* 76 Me. 385; *Koopman v. Blodgett,* 70 Mich. 610, 38 N. W. 649; *East Hoquiam Boom etc. Co. v. Neeson,* 20 Wash. 142, 54 Pac. 1001; *Haines v. Hall,* 17 Ore. 165, 20 Pac. 831; *Nutter v. Gallagher,* 19 Ore. 375, 24 Pac. 250; *Murray v. Preston,* 106 Ky. 561, 50 S. W. 1095; *Banks v. Frazier,* 111 Ky. 909, 64 S. W. 983; *Witheral v. Muskegon Booming Co.,* 68 Mich. 48, 35 N. W. 758, 13 Am. St. 325; *Morgan v. King,* 35 N. Y. 453, 91 Am. Dec. 58. If the stream is navigable, the dam is an unlawful obstruction. Gould, Waters (3d ed.), § 134; *Carl v. West Aberdeen Land etc.*

*Co.*, 13 Wash. 616, 43 Pac. 890; *United States v. Belling-ham Bay Boom Co.*, 176 U. S. 211, 20 Sup. Ct. 343, 44 L. Ed. 437; *People v. Vanderbilt*, 26 N. Y. 287; *Blanch-ard v. Western U. Tel. Co.*, 60 N. Y. 510; *Wisconsin River Imp. Co. v. Lyons*, 30 Wis. 61; *People v. Gold Run etc. Co.*, 66 Cal. 138, 4 Pac. 1150; *Commonwealth v. Church*, 1 Pa. St. 105, 44 Am. Dec. 112; *Stevens Point Boom Co. v. Reilly*, 46 Wis. 237, 49 N. W. 978; *McPheters v. Moose River etc. Co.*, 78 Me. 329, 5 Atl. 270; *Gifford v. Mc-Arthur*, 55 Mich. 535, 22 N. W. 28; *Sultan Water & P. Co. v. Weyerhauser Timber Co.*, 31 Wash. 558, 72 Pac. 114. The riparian owner is entitled to the natural flow of the water. Gould, Waters (3d ed.), §§ 204, 218; Cooley, Torts (2d ed.), 694; *Crook v. Hewitt*, 4 Wash. 749, 31 Pac. 28; *Lux v. Haggin*, 69 Cal. 255, 10 Pac. 674; *Rigney v. Tacoma Light & W. Co.*, 9 Wash. 576, 38 Pac. 147, 26 L. R. A. 425; *Whatcom v. Fairhaven Land Co.*, 24 Wash. 493, 64 Pac. 735, 54 L. R. A. 190; *Brewster v. Rogers Co.*, 169 N. Y. 73, 62 N. E. 164; *Noonan v. Albany*, 79 N. Y. 470, 35 Am. Rep. 540; *McCormick v. Horan*, 81 N. Y. 86, 37 Am. Rep. 479; *Lone Tree Ditch Co. v. Rapid City L. Co.* (S. D.), 93 N. W. 650; *East Jersey Water Co. v. Bigelow*, 60 N. J. L. 201, 38 Atl. 631; *Watkinson v. Mc-Coy*, 23 Wash. 372, 63 Pac. 245.

*Cooley & Horan*, for respondent. A stream is navigable if it will float logs during periodical freshets. *Falls Mfg. Co. v. Oconto River Imp. Co.*, 87 Wis. 134, 58 N. W. 257; *Morgan v. King*, 35 N. Y. 454. The test of navigability is whether the stream in its nature is capable of being used to float boats, rafts or logs. *Moore v. Sanborne*, 2 Mich. 520; *Brown v. Chadbourne*, 31 Me. 9; *Hickok v. Hine*, 23 Ohio St. 523. That it is customary to go upon the banks to assist in driving logs does not affect the question of

navigability. *Olson v. Merrill,* 42 Wis. 203. One may enter upon the land of a riparian owner to reclaim logs stranded without negligence. *Weise v. Smith,* 3 Ore. 445, 8 Am. Rep. 621; *Carter v. Thurston,* 58 N. H. 104, 42 Am. Rep. 584; *Brown v. Chadbourne, supra; Hooper v. Hobson,* 57 Me. 273, 99 Am. Dec. 769. The riparian owner may dam up the water for the purpose of floating logs, so long as such dam does not constitute an obstruction to navigation, even though it may interfere with the ordinary flow of water across the lands of a lower proprietor. *Buchanan v. Grand River etc. Co.,* 48 Mich. 364, 12 N. W. 490; *Beard v. Clarke,* 35 Minn. 324; *Merriman v. Bowen,* 33 Minn. 445; *Kroll v. Nester,* 52 Mich. 70, 17 N. W. 704; *Kretzschmar v. Meehan,* 74 Minn. 211, 77 N. W. 41; *Mabie v. Matteson,* 17 Wis. 1; *Patten v. Marden,* 14 Wis. 513.

HADLEY, J.—The respondent brought this action against appellant to procure an injunction against an alleged threatened interference with the use of a stream for the floating of shingle bolts. The stream is known as the West Fork of Woods creek. It commences at the foot of Lake Roesiger, in Snohomish county, and flows therefrom in a southwesterly direction, passing through the lands of both appellant and respondent. Respondent owns an extensive body of timber lands adjacent to the lake and stream, and owns the lands upon both sides of the stream at its source. Appellant's lands lie below those of respondent. The respondent has constructed, and has heretofore operated, a dam at the lower end of the lake, for the purpose of storing the waters within the lake to be used in flooding the stream in order to accelerate the movement of shingle bolts. The complaint charges that appellant threat-

ens, by obstruction, to prevent respondent from driving its bolts through the stream where it crosses appellant's land. It is alleged that the stream is navigable or floatable for shingle bolts, and that respondent has now about three thousand cords of bolts stored in the lake ready for movement, which it will be unable to move unless appellant is restrained.

The answer denies that the stream is navigable, and alleges that, by reason of the storing of the water in the lake, the flow of the stream is at times entirely stopped, and that at other times respondent suddenly and without warning releases the stored water, and that it runs down and overflows the lands of appellant adjacent to the stream, washes away the soil, and destroys appellant's roads and landings constructed for the movement of his own shingle bolts; that appellant is engaged in removing the cedar timber from his own land, and that by reason of respondent's obstruction of the natural flow of the water, it is impossible for him to run his shingle bolts down said stream. The answer prays for damages, and for an injunction perpetually restraining respondent from interfering with the natural flow of the water in the creek, and from flooding appellant's lands.

The cause was tried before the court without a jury. Findings of facts and conclusions of law were entered, and the decree provides that appellant shall be perpetually enjoined from in any manner obstructing or interfering with the navigation of said stream, or the driving of respondent's shingle bolts across the lands of appellant. It is further provided that appellant shall be restrained from in any manner interfering with or preventing respondent's employes from going upon the banks of said stream for the purpose, only, of breaking jams of bolts which may occur,

so long as the going upon said banks does no injury to appellant or his land. This appeal is from that decree.

The first alleged error is that the court permitted any testimony to be introduced in support of the complaint. This contention is based upon the theory that the complaint shows that the stream in question is not navigable or floatable for shingle bolts, in its natural condition. It is expressly averred that the stream is navigable for said purpose, but it is argued that other allegations have the effect to negative such fact. The following averment is pointed out as destroying the force of the positive allegation as to navigability:

"That it (respondent) has at great expense constructed a dam across the foot of Lake Roesiger for the purpose of storing water, thereby furnishing a sufficient supply of water in the aforesaid stream to conveniently and rapidly float shingle bolts and other timber products down the same to the mill of this plaintiff."

We think the conclusion which appellant draws does not necessarily follow when the two averments are taken together. The quoted allegation amounts to no more than the statement that respondent's own convenience, in the moving of its shingle bolts, is better served by the storing of the water and the operation of the dam. But it does not say that the stream is not floatable in its natural state. The court did not err in overruling the objection to the introduction of any testimony upon the above mentioned ground.

A further point raised under the objection to the introduction of any testimony is that an attempt is made in the complaint to plead an estoppel against appellant, but that the allegations are insufficient to charge an estoppel. The complaint avers that respondent, at its own expense, cleared the said stream of obstructions across appellant's land, in order to facilitate the movement of shingle bolts; that ap-

pellant acquiesced therein, actually assisted in the clearing out of such obstructions, thereafter used the benefits accruing therefrom, and also the flow of water as furnished by the dam and improvements constructed by respondent at the lake. We agree with appellant's contention that the facts stated are not sufficient to estop him from claiming now that respondent is interfering with the natural flow of the water. The mere fact that he made no objection to clearing the bed of the stream from obstructions, or that he may even have assisted therein, does not necessarily establish that he consented that the floatage of the stream should be conducted in any other manner than as provided by the natural flow of the water. The further fact that he may have used the water, as it was sent down the stream by the occasional opening of the dam, during a period of about two years, does not establish his acquiescence in the continued interruption of the natural flow of the water, and amounts to no more than a mere license for a temporary interruption, revocable at will. Such facts do not contain the essential elements of estoppel. *Rigney v. Tacoma Light & W. Co.,* 9 Wash. 576, 38 Pac. 147, 26 L. R. A. 425; *Hathaway v. Yakima Water etc. Co.,* 14 Wash. 469, 44 Pac. 896, 53 Am. St. 847. It is true, therefore, that appellant is not estopped to assert that the complaint shows that respondent, through the operation of its dam, is interfering with the natural flow of the water. But in view of the allegation that the stream is navigable, it is also true that appellant has no right to interfere with its navigation by respondent, as it is alleged he threatens to do, and it was not error, under the averments of the complaint, to admit evidence upon that subject.

The court found that, with the removal of the artificial obstructions, the stream is capable of navigation by shingle bolts after heavy rains and during freshets, which occur

with periodic regularity in the spring and fall of each year, and that it is so navigable without the storage of the water in the lake, and without the aid of said dam. It is assigned that the court erred in so finding. We think not, under the evidence. There was sufficient evidence to sustain the finding that the stream, in its natural state, can be practicably used for the floatage of shingle bolts to market, at the times and seasons specified in the court's findings. Such makes it a navigable stream within the holding of this court in *Watkins v. Dorris,* 24 Wash. 636, 64 Pac. 840, 54 L. R. A. 199. In that case the trial court found Elochoman creek to be an unmeandered stream, and that it can, during annually recurring freshets, be used profitably for the floating of sawlogs to market. This court held it to be navigable, and a highway for that purpose. Woods creek is much smaller than Elochoman creek, is also unmeandered, and is doubtless non-navigable for sawlogs. But the evidence shows that it has sufficient capacity, in its natural state, during annually recurring periods, to float shingle bolts, and while a single shingle bolt contains but a small amount of timber, compared with a sawlog, yet, in the aggregate, timber in that form in this locality is relatively of equal commercial value with sawlogs, and its carriage to market is, perhaps, as important to the timber industry of this state as that of sawlogs. Elochoman creek was declared to be navigable, for the reason that it furnishes a natural highway for the product of the great logging industry in this state, and Woods creek should, also, be held to be navigable, because it furnishes a similar highway for the product of another branch of the same industry. Elochoman creek was held to be a navigable stream because it is navigable in fact for the floatage of logs or timber to market. Its navigable character is restricted to a certain commercial and industrial purpose, and does not comprehend naviga-

bility in the broad sense, as applied in America to the great
rivers and water highways. The rule that navigability in
fact for commercial purposes makes a water course a nav-
igable one was also declared in *Dawson v. McMillan,* 34
Wash. 269, 75 Pac. 807. The reasons leading to the hold-
ing in this state and others, where the timber industry is
important, that streams which are navigable in fact for the
floatage of timber to market shall be public highways for
that purpose, are founded upon commercial convenience
and necessity, because of the environment of the industry.
Much of the timber grows in the mountains, also upon the
foothills, and in other localities which are inaccessible by
means of transportation facilities, without great expense.
Nature has, however, provided numerous streams which
flow out from these timber centers, and which are available
highways for the carriage of the timber to market. In a
locality so situated, it seems reasonable that these high-
ways should be used for such purposes. It is true, the
majority of these streams, being unmeandered, pass over
private property, and their beds are owned by the adjacent
land owner. But the lands are naturally burdened, if it be
a burden, by the streams themselves, with their defined
banks and flowing water, and it is not an additional burden
to the land owner for the timber product to float along with
the already running water, provided it is so done as not to
damage his land. His rights in the latter particular must,
however, be strictly and carefully guarded. Under the
former decisions of this court, and for the further reasons
herein assigned, the court did not err in holding that Woods
creek is a navigable stream for the floatage of shingle bolts.
The provision in the decree properly followed, whereby ap-
pellant is restrained from interfering with the running of
respondent's shingle bolts along said stream where it crosses
appellant's lands.

It being established that the stream is a navigable one, and that appellant shall not interfere with respondent's navigation of it, we must next inquire as to the methods and limitations of that navigation. The court refused to grant appellant an injunction preventing respondent from continuing the storage of the water in Lake Roesiger, and the periodic flushing of the stream. We think this was error. Under well established principles, appellant is entitled to the natural flow of the water across his land. *Crook v. Hewitt*, 4 Wash. 749, 31 Pac. 28; *Rigney v. Tacoma Light & W. Co., supra; New Whatcom v. Fairhaven Land Co.,* 24 Wash. 493, 64 Pac. 735, 54 L. R. A. 190. It is said that, although language used in the above cases declares the general principle, yet there was an actual threatened diversion of a substantial portion of the water in each case, while, in the case at bar, there is no diversion, but simply a detention, followed by a restoration of all the water before it reaches appellant's lands. This detention, however, amounts practically to a total detention for irregular periods, and at times unknown to appellant, without warning, it is released in such quantities as to greatly increase the natural flow and, according to testimony in the record, actually causes an overflow of his lands. The general principle governing the fundamental rights of all riparian proprietors is well stated as follows:

"Riparian proprietors upon both navigable and unnavigable streams are entitled, in the absence of grant, license, or prescription limiting their rights, to have the stream which washes their lands flow as it is wont by nature, without material diminution or alteration. Each proprietor may, therefore, insist that the stream shall flow to his land in the usual quantity, at its natural place and height, and that it shall flow off his land to his neighbor below in its accustomed place and at its usual level." Gould, Waters (3d ed.), § 204.

That such a detention of water as is shown in this case is prejudicial to the appellant's rights appears from the following authority:

"It is an unreasonable detention of the water to gather it into reservoirs for future use in a dry season, or for the purpose of obtaining a greater supply than the stream affords by its natural flow in ordinary stages, or in order that, by letting it off occasionally, a flood may be obtained for the purpose of floating logs; . . ." Cooley, Torts (2d ed.), p. 694.

The maintenance and operation of the dam prevents appellant from navigating the stream himself at times when he may wish to do so, thereby obstructing navigation, and, unless he consents to its maintenance, the dam is to him a nuisance, which he is entitled to have enjoined. *Carl v. West Aberdeen etc. Co.*, 13 Wash. 616, 43 Pac. 890; *Sultan W. & P. Co. v. Weyerhauser Timber Co.*, 31 Wash. 558, 72 Pac. 114. We therefore think appellant was entitled to an injunction, preventing respondent from maintaining and operating the dam, and requiring it to permit the water to flow across appellant's lands in its natural and regular way, and respondent must conduct its own navigation of the stream over such natural flow.

Another provision of the decree, with reference to the methods attending respondent's navigation, also calls for examination. It will be remembered that, by its terms, the decree prohibits appellant from interfering with respondent's employes in the way of preventing them from going upon the banks of the stream upon appellant's lands, for the purpose of breaking jams of shingle bolts, so long as the going upon the banks does no injury to appellant or his lands. We think this provision of the decree is also erroneous. We believe we went as far as we should go in the interest of public convenience, when we held, in *Watkins*

*v. Dorris, supra,* that private land owners hold the beds of
unmeandered streams subject to the easement of driving
timber products over the land.   But we tried to make it
clear in that case that the timber driver must confine him-
self and his operations to the highway itself—the bed of
the stream, until the land owner consents to the use of the
banks, or until the right to their use has been acquired in a
lawful way.   If more emphatic statement of that rule is
necessary, we now wish to be understood as making it, with
all needed emphasis.   The fundamental principle of right
in the land owner to control his own premises, outside of
the bed of the stream, must not be violated.   To leave
parties under such terms as this decree provides would, in
many instances, invite trouble and litigation.   Each one
would assume to be his own judge as to whether any injury
is done to the land.   What might appear to the land owner
as injury might not so appear to the timber driver, and
thus a controversy would at once arise, probably requiring
repeated litigation to settle.   The driver must know from
the beginning that he must, in no event, go upon the banks
of the stream in his operations without the owner's permis-
sion, and thus controversies about damages accruing in that
way will be avoided.   Enough controversies will arise about
the manner of operating in the bed of the stream to the
possible damage of the adjacent land, without adding there-
to those arising from semi-legalized trespass upon private
premises, which would be the case if it were judicially held
that one may operate upon private lands against the owner's
consent, and without compensation.

The court found that respondent's acts have produced no
actual injury or damage to appellant or his lands.   Appel-
lant contends that it was error to so find.   The evidence
conflicts upon this subject, and we shall not disturb the

finding.    No judgment for damages will therefore be directed.

The decree should be modified in accordance with what has been herein said.   The cause is remanded, with instructions to the trial court to enter a decree conformable to this opinion.   The appellant shall recover the costs of the appeal, and neither party shall recover costs in the lower court.

FULLERTON, C. J., and MOUNT, ANDERS, and DUNBAR, JJ., concur.