[No. 7745.   Decided August 26, 1909.]

CHARLES H. HULET *et al.*, *Respondents*, v. WISHKAH BOOM COMPANY, *Appellant*.[1]

APPEAL—REVIEW—OBJECTIONS NOT MADE BELOW. In the absence of a demurrer, and of the evidence, objection to the sufficiency of the complaint will not be considered on appeal.

NAVIGABLE WATERS—OBSTRUCTIONS—INJUNCTIONS—PARTIES ENTITLED TO SUE. Riparian owners on a navigable stream, whose means of ingress and egress to and from their lands is totally obstructed by a boom company, are entitled to maintain an action to enjoin the obstruction, although it may be a public nuisance.

SAME—PARTIES LIABLE. An order compelling a boom company to remove a boom and clear away logs and jams in a river, is warranted, notwithstanding that the acts of loggers were claimed to have caused the obstructions, where it appears by the findings that the boom company contracted with loggers for the use of its splash dams, whereby logs were driven down the stream by artificial freshets, a toll being paid to the company for such drives, that the log jams and injury to riparian owners resulted therefrom, that more logs were driven down than could be handled by the company's

[1]Reported in 103 Pac. 814.

boom, and that the loggers placed a boom across the river to hold such accumulations, which boom the company opened from time to time and replaced; since the loggers are shown to be so closely connected with the company as to be either its servants or joint tort feasors.

SAME—RIPARIAN OWNERS—RIGHTS ON TIDE WATERS.  The objection that riparian owners on a tide water stream have no riparian rights of ingress and egress by reason of the state's ownership of intervening tide lands, does not go to their right to an injunction to prevent artificial freshets whereby their uplands are damaged and washed away, and logs deposited thereon, or to prevent unnecessary interference with the public right of navigation on the stream.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered July 2, 1908, upon findings in favor of the plaintiffs, enjoining the maintenance of obstructions placed in a navigable river, ordering the removal thereof, and awarding damages, after a trial on the merits before the court without a jury.   Affirmed.

*Morgan & Brewer* and *W. H. Abel*, for appellant.

*Elmer E. Shields* and *W. I. Agnew*, for respondents.

CROW, J.—Action by Charles H. Hulet and Maggie Hulet, his wife, against the Wishkah Boom Company, a corporation, to enjoin the defendant from so operating its splash dams and boom as to obstruct navigation of the Wishkah river and injure respondents' lands, and to recover damages.   From a judgment and decree granting an injunction and awarding damages, the defendant has appealed.

The case comes to this court on the pleadings, and the findings made by the trial court.   The assignments of error present the single question whether the respondents are entitled to the injunctive relief, and the damages awarded.   The sufficiency of the complaint is challenged, but the record does not show that the appellant attacked it by demurrer.   This being true, we will, in the absence of the evidence which might have amplified and aided the complaint, confine ourselves to the single question whether the findings support the judgment and decree.

The trial court found, that respondents are the owners in
fee simple of lands located on the westerly bank of the Wish-
kah river; that said river is a navigable, meandered stream
and public highway, being respondents' means of ingress to
and egress from their lands, which reach its meandered line;
that the appellant corporation is carrying on its business as
a boom and driving company on the river, in which it has
constructed a logging boom, below respondents' land, for
catching, holding, and sorting logs; that its boom has been
approved by the war department of the United States, and
is not in itself an unreasonable hindrance to navigation; that
appellant has also constructed and maintained above re-
spondents' land, and above the influence of the tide, three
large splash dams, and authorized their use by certain log-
gers to create artificial freshets and drive logs down the river
to appellant's boom; that the river is influenced by the tide
and is navigable in fact for a distance of about fifteen miles
above its mouth; that respondents' lands are about ten miles
above its mouth, and are located between appellant's boom
and the splash dams; that the river above the influence of
the tide carries and maintains an insufficient supply of water
to float and drive logs to the appellant's boom; that for three
years certain loggers have deposited timber products in the
river above and below respondents' land, all consigned to
appellant's boom; that for the purpose of securing the driv-
ing of logs to its boom, appellant entered into a contract with
the loggers whereby it authorized them to use the splash dams
for creating artificial freshets; that by the terms of the con-
tract such use was to be considered a driving of the logs by
appellant, it receiving a stipulated toll therefor, and paying
some of the employees who operated the dams; that under
this agreement large volumes of water were collected and
stored by the dams, and under the loggers' directions were
suddenly released about three times a week, to create arti-
ficial freshets and drive logs; that the logs were thus driven

in such large quantities that immense jams and drifts formed in the river channel and obstructed its navigation above appellant's boom; that logs were deposited in the river, some above and others below the splash dams; that those deposited above were driven by artificial freshets through the gates of the dams, and with others deposited below the dams would, by floating on the incoming tide, return up the river; that when the tide receded, some would lie in jams in the river-bed, while others, returning with the tide, would block the landings of certain loggers located below respondents' lands; that such loggers for their own convenience placed a boom stick across the river below respondents' land and above appellant's boom, to prevent the obstruction of their landings; that appellant allowed the boom stick to remain as an obstruction across the river and hold the logs coming down from above; that when logs were needed in its boom, it would from time to time open the boom stick and allow them to float down; that it then replaced or closed the boom stick, and that by reason of the location of the boom stick across the river large jams of logs were maintained in the river above the same; that the boom stick and appellant's splash dams so operated by the loggers under their arrangement with appellant, did for three years cause a total obstruction of navigation and prevent the respondents from using the stream as a highway to and from their lands; that artificial freshets produced by the operation of the splash dams washed away lands of the respondents abutting the stream to the extent of one acre, in addition to loss from natural erosions, to their damage in the sum of $200; that the artificial freshets also caused a large number of logs to float out of the channel of the stream and to remain where deposited upon respondents' cultivated lands, to their further damage in the sum of $50, and that such damages were caused by acts of the appellant in permitting the loggers to drive more timber products down the stream than it could care for in its boom.

Upon these findings a final judgment was entered whereby it was ordered, that the appellant be enjoined from placing and maintaining in the water of the river between its mouth and the respondents' lands any saw logs or timber products which will, *in any unreasonable manner*, impede or obstruct the navigation of the river by respondents, as a highway; that appellant be commanded to remove, abate, and clear away any logs, timber products or other obstructions which exist in the river between respondents' lands and the mouth of the river, so as to unnecessarily interfere with or prevent its navigation by respondents; that appellant be restrained from operating its splash dams so as to create such unnatural freshets as will damage respondents' land by overflowing the same, or depositing logs thereon, or causing the lands to be eroded and washed away, and that respondents recover $250 damages and costs.

Appellant's first contention is that obstructions to the respondents' navigation of the river, if they existed, were a public nuisance, the continuance of which could not be abated by an injunction obtained in an action maintained by a private individual; that respondents as private individuals cannot maintain this action for the reason that they are similarly situated with many others upon the river, and fail to allege special injury to themselves. The trial court found that the river was the highway which constituted the respondents' means of ingress and egress to and from their lands. It does not appear from the findings that they did or did not have any other highway, but it does appear that they had this one which was totally obstructed. This finding establishes the fact that the respondents were specially injured, which fact entitled them to maintain an equitable action to enjoin the appellant from causing the obstructions. *Carl v. West Aberdeen Land & Imp. Co.*, 13 Wash. 616, 43 Pac. 890; *Smith v. Mitchell*, 21 Wash. 536, 58 Pac. 667, 75 Am. St. 858; *Dawson v. McMillan*, 34 Wash. 269, 75 Pac. 807.

Mr. Farnham, in vol. 1 of his work on Waters and Water Rights, § 85a, says:

"Regarding the obstruction of the stream as a public nuisance it necessarily follows that to enable an individual to maintain an action he must show a special injury to himself, different in kind from that suffered by the public at large. But the owner of a wharf or other improvement on a stream does suffer an injury different in kind from that suffered by the public when the value of his wharf is destroyed by the closing of the stream. Furthermore, a nuisance may be both public and private. And the closing of a stream may be a public nuisance so far as it interferes with the public right of navigation, and a private nuisance to owners of land along the bank whose navigation rights are thereby cut off."

In *Dawson v. McMillan, supra,* it was found that a certain navigable slough, extending from lands of the plaintiff to Bellingham Bay, subject to the ebb and flow of the tide, was used by the plaintiffs and other loggers in carrying their timber products to market; that the plaintiffs had no other feasible or practicable way to carry their timber to market; and that the navigation of the slough was obstructed by the defendant. This court, in passing upon the identical question now raised by the appellant, said:

"Appellants' last position is based upon the claim that the United States is the only party having a right to prevent the obstruction, and that respondents are not injured until they are denied free passage. It has been frequently held by this court that, where, by a public nuisance, a private party is specially damaged, his damage differing in kind and degree from that of the general public, he may maintain an action to abate such nuisance. *Carl v. West Aberdeen Land Co.,* 13 Wash. 616, 43 Pac. 890; *Smith v. Mitchell,* 21 Wash. 536, 58 Pac. 667, 75 Am. St. 858; *Griffith v. Holman,* 23 Wash. 347, 63 Pac. 239, 54 L. R. A. 178, 83 Am. St. 821; *Sultan W. & P. Co. v. Weyerhauser Timber Co.,* 31 Wash. 558, 72 Pac. 114; 21 Am. & Eng. Ency. Law (2d ed.), p. 444. By findings Nos. 4, 5, and 7, it is shown that respondents are specially damaged, and also that the obstruction exists, and that respondents are prohibited from using the highway and from removing their timber products to market."

It does not appear, nor has it been found, that the appel-
lant is not keeping a portion of the channel of the river open
along the side of its boom, as required by law, but it does
appear that the operations above its boom, conducted by it,
and through the medium of the splash dams operated by log-
gers with whom it has an agreement, are causing obstructions
to navigation. These acts which interfere with the respond-
ents' use of a public highway ordinarily affording them in-
gress to and egress from their lands, may be enjoined in
an action prosecuted by them.

Appellant complains of the order commanding it to remove,
abate, and clear away the logs and other timber products
which create jams, drifts, and obstructions in the river and
interfere with its navigation by respondents. It insists that
the findings are not broad enough to establish the fact that
its boom or splash dams have caused such obstructions, but
that the findings do show that they were caused by loggers
over whom appellant has no control, who deposited the tim-
ber products in the stream, constructed the boom stick, and
operated the splash dams. We think the findings show these
acts to have been performed by the loggers under appellant's
direction and control. The situation disclosed by the find-
ings, indicates that the appellant's boom has not sufficient
capacity to collect, store and care for all the logs consigned
to it, and that instead of properly enlarging its boom and
keeping the river open for navigation, it has endeavored to
detain the logs by use of the boom stick which the loggers
placed in the stream. The appellant could prohibit the
loggers from using its splash dams to such an extent as will
prevent the driving of more logs than it can care for in its
boom. The findings show the appellant to be so closely iden-
tified with the loggers in these operations upon the river, that
if the latter are not its servants or employees, they are at
least joint tort feasors with appellant, making them and ap-
pellant jointly or severally liable.

The appellant, citing *Eisenbach v. Hatfield,* 2 Wash. 236, 26 Pac. 539, 12 L. R. A. 632, and *Van Siclen v. Muir,* 46 Wash. 38, 89 Pac. 188, decided by this court, insists that respondents have no riparian or littoral rights on the stream, as it is subject to the ebb and flow of the tide, and that the tide lands belonging to the state lie between the natural stream and respondents' upland. The respondents in common with the public have the right to use the stream for navigation. It is the highway affording their means of ingress and egress, and its obstruction especially injures them. It cannot be seriously contended that the appellant, by its operations on the river, can wash away respondents' uplands or deposit obstructions on their cultivated lands, on the theory that they have neither riparian nor littoral rights. Their uplands having been injured and damaged, they were entitled to the injunction and damages granted, even though the state does own tide lands between their uplands and the navigable stream. Were the appellant to purchase the tide lands, such purchase would not confer upon it the right to destroy and injure respondents' uplands on the theory that they have neither riparian nor littoral rights, nor would it relieve the appellant from liability for unnecessarily interfering with the public right of navigation over the highway which affords respondents ingress to and egress from their lands.

The judgment is affirmed.

Rudkin, C. J., Dunbar, Mount, Parker, Fullerton, and Chadwick, JJ., concur.