James P. Burroughs, Herman L. Pierson and Clarence M. Harris, v. Samuel C. Whitwam.

*Navigable river—Ordinance of 1787—Evidence—Prescription.*

1. Under the proofs in this case the court should have instructed the jury that the river in question was not navigable.

2. The fact that the public have used a river, after a dam was built across it, for pleasure boating or fishing has no tendency whatever to prove it navigable, and evidence of such use is inadmissible.

3. The fact that the waters of a river eventually find their way through the lakes to the St. Lawrence can have no bearing upon the question of its navigability. The ordinance of 1787, in providing that the "navigable waters leading into the Mississippi and St. Lawrence and the carrying places between them shall be common highways, and forever free," etc., did not by its terms, or in the spirit of its enactment, dignify every little rill or brook whose waters finally reached these great rivers into a navigable stream. It was intended to and did apply only to such streams as were then common highways for canoes or batteaux in the commerce between the ·northwestern wilderness and the settled portions of the United States and foreign countries, and as to such rivers not then in use as would by law be embraced in the definition of "navigable waters."

Error to Genesee. (Newton, J.) Argued Jan. 12, 1886. Decided Jan. 20, 1886.

Trespass. Defendant brings error. Reversed. The facts are stated in the opinion.

*Durand & Carton* and *Wisner & Johnson*, for appellant:

Thread river is capable of being used by boats and for floatage, is therefore navigable and a common highway: *Moore v. Sanborne*, 2 Mich. 519; *Thunder Bay River Booming Co. v. Speechly*, 31 Mich. 336. The ordinance of 1787 covers this stream, and section 4 of article 18 of the Constitution of Michigan provides that no law shall be passed which shall prejudice the right of individuals to the navigation of navigable streams: How. Stat. p. 69; and under both ordinance and constitutional provision the use of the navigable streams of this State is free to all the people.

The term, navigable waters, has the same meaning as in the ordinance of 1787 and is not limited to waters where the tide ebbs and flows: *Tyler v. People*, 8 Mich. 320. The stream in question being navigable the right of the public in its use is paramount to the rights of the riparian owner, which are limited and qualified by such public rights, not only to navigation but to such other uses, if any, as appertain to the public, over the water: *Ryan v. Brown*, 18 Mich. 196; *Rice v. Ruddiman*, 10 Mich. 140.

Without regard to the question of navigability these waters were a public highway, and defendant had a right to be upon them and to fish from his boat. Fish are, like any other animals, *feræ naturæ*, and in this region have always been regarded as open to capture by those who have a right to be where they are captured: *Lincoln v. Davis*, 53 Mich. 391.

A long and continued usage will of itself grow into a public right, and especially where the public interest, or public convenience, is essentially promoted: *Balston v. Bensted*, 1 Camp. 463; *Shaw v. Crawford*, 10 Johnson 237; *Jacobson v. Fountain*, 2 Johnson 170; *Gould v. James*, 6 Cowen 369; *Rogers v. Jones*, 1 Wendell 237.

*Long & Gold* and *John D. Conely*, for plaintiffs.

Morse, J. The plaintiffs sued defendant in justice's court in an action of trespass, alleging in their declaration filed in the cause that the defendant broke and entered their close, described as "All that land flowed by the mill-pond at high-water mark, on west half of northwest quarter of section 20, town 7, north of range 7 east, in township of Burton, in Genesee county." The main trespass complained of is the act of the defendant in going on the water of this mill-

pond in a boat and catching fish, which he took and carried away, of the value of two dollars; setting forth also that the defendant previous to the committing of the acts complained of, had been duly notified that the plaintiffs forbade all entry or trespass on said premises. Defendant pleaded the general issue. From the justice's court the case went to the circuit without any change of the pleadings, and, upon a trial there, the jury found a verdict for the defendant.

The plaintiffs are the owners of a grist-mill situated upon a stream known as " Thread River," and have a dam across said stream, creating a pond. The land covered by this pond, described in the declaration, is within and enclosed by the lands of the plaintiffs. Said dam and pond have been in existence, except in case of washouts, continuously since 1832, and perhaps longer.

There is no dispute as to the plaintiffs' ownership of the soil under this pond, as claimed in their pleadings, or that the defendant was on the pond in a boat fishing upon some of the days named in the declaration. The controversy, therefore, turned upon his right to be there after notice by plaintiffs forbidding him to enter upon the premises to fish. The defendant claims that he has a right to go on the pond and catch fish because the Thread is a navigable river. The plaintiffs deny that the stream is navigable, and insist that they have the exclusive right to the fish in the waters in the pond above the soil owned by them.

The court below instructed the jury, in substance, that if they found the Thread to be a navigable stream, the public would have a right to use the same for travel on pleasure or business; and, if traveling thereon by boat lawfully, the defendant might take fish from the waters of the pond without being liable as a trespasser.

This was excepted to, and the plaintiffs' counsel here insist that the evidence in the case did not warrant the submission of the character of this stream, as to its being navigable, to the jury; that there was no evidence tending to show it to be of any utility at all for public use for floating or carrying purposes, and that it is a mere brook or creek, with no

element of navigability about it; that the court, on the contrary, should, under the proofs, have instructed the jury that it was not a navigable river.

This position we think correct. The most favorable evidence for the defendant shows the Thread to be a very crooked stream, running above this dam five or six miles to get two; varying from 15 to 50 feet in width, its general average being about 25 feet; its average depth about two or three feet, being sometimes in the highest freshets from six to seven feet deep in places, and in a dry time so shallow in places that one can cross it without going over shoe. This pond is only a mile or so above where the Thread empties into the Schwartz creek, and we have no testimony as to the character of the stream, except for about six miles above the pond. It has never been used for the floating of logs, or any other commodity. It has never been a water highway for purposes of travel or transportation. Once or twice a year some adventurous fisherman has pushed or poled a canoe or boat up and down it for a few miles. It is not a meandered stream, and the farmers along it have fences or gates across the stream to mark the lines of their farms. We have a history of this stream for over 50 years, and yet this most favorable view of this creek must also be taken in connection with the fact that its depth of water is taken above the mill-pond, and is no doubt more or less increased by the setting back of its waters. It also appears, without contradiction, that there are plenty of places called "rapids," where the depth of water is not over four or six inches, except in times of high water or freshets; and that the periods of high water are of very short duration; and no advantage of such freshets has ever been taken for floating purposes of any kind. Under the facts this stream does not come anywhere within or near the most liberal definition of a navigable stream, in the books.

It has none of the elements of navigability as laid down in our court: *Moore v. Sanborne*, 2 Mich. 519; *Thunder Bay River Booming Co. v. Speechly*, 31 Mich. 336. It has never been used at all for public purposes, except fishing, and

there is no evidence that it can be used hereafter for any other purpose save pleasure. The fact that the public have used it, after the dam was built, either for pleasure boating or fishing, has no tendency whatever to prove it navigable. Indeed, it was not seriously contended on the argument that it had ever been used for any public purpose as a highway; but stress was laid upon some testimony in the case of ex-Gov. Begole and others, to the effect that, compared with other streams used for the purpose of floating logs, this seemed a first-class stream, in the opinion of the witnesses; but facts are better than theories, and disprove them. In fifty years, during which Genesee county has been converted from a wilderness into a garden, no one has ever yet thought of running a log or stick of timber down this creek to the city of Flint. This is pretty nearly conclusive evidence that the stream has never been susceptible of public use for floatage, either valuable or otherwise.

Because the waters of the Thread eventually find their way through the Lakes to the St. Lawrence can have no bearing upon the question of its navigability.

The ordinance of 1787, in providing that the "navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between them, shall be common highways, and forever free," etc., did not by its terms, or in the spirit of its enactment, dignify every little rill or brook whose waters finally reached these great rivers into a navigable stream. It was intended to and did apply only to such streams as were then common highways for canoes or batteaux in the commerce between the northwestern wilderness and the settled portions of the United States and foreign countries, and as to such rivers not then in use as would by law be embraced in the definition of "navigable waters."

Yet the learned circuit judge gave the jury to infer that the fact of the waters of this stream flowing into the St. Lawrence was to be considered by them as having a bearing upon the question of its being navigable; and it is claimed by defendant's counsel here that this ordinance of 1787 has had something to do in making this stream a common high-

way and forever free to the public. We do not quite understand this claim in view of the fact that there is no evidence whatever that it was ever used for canoe navigation, even by Indians; and the stream, since it has been known to civilization, certainly lacks the essential characteristics of a navigable river.

The defendant's counsel also insists in support of the verdict below that there was evidence in the case tending to show an almost continuous use by the public of this mill-pond for fishing for forty years or more; and that in some way thereby the public, and the defendant as one of the public, have gained a right by prescription or custom to continue fishing there, as if they held a grant.

This view was not taken on the trial by defendant's counsel, nor was any question of this kind submitted by the court to the jury, nor does the record show that the defendant's counsel requested any direction by the court on this subject. The evidence relating to the use of the waters of this pond for fishing purposes was offered and introduced, against the objection of plaintiffs' counsel, by the counsel for the defendant, on the theory that it tended to show the navigability of the stream. This was error. It had no tendency, as heretofore shown, to establish it.

The views held by us as to the character of this stream render it unnecessary to discuss the evidence, or the charge of the court, in relation to the original channel, and the status of one fishing outside of it as to being a trespasser.

The judgment of the court below must be reversed, and a new trial is ordered, with costs of this Court in favor of plaintiffs.

Campbell, C. J. and Sherwood, J., concurred.

Champlin, J. (dissenting). I cannot concur in the views expressed by my brother Morse in regard to the navigability of the Thread river, nor in regard to the scope of the ordinance of 1787.

The navigability of a stream of the kind of Thread river does not depend upon the fact as to whether or not it has

been previously used for the purpose of navigation or float-age, but in its capability for such use. If it is capable of being used for floatage, either of boats, rafts, shingle bolts, staves, posts, poles, or other products of the forest, to advantage, so that it may be said to be valuable for such purposes, then within the repeated decisions of this Court such stream is entitled to be classed as navigable. Nor can the future use be foreclosed by the fact that it has not hitherto been used for floatage.

If that were so, no right would exist to use the great majority of the streams in this State for the purpose of floating logs and other floatables to market, or places of manufacture, for such use has sprung up within the past thirty years; and if these streams were not what is termed navigable before such use, they certainly are not afterward. I think this Court properly defined what is a navigable stream in *Moore v. Sanborne*, 2 Mich. 519, and that definition has been adhered to until the present time. In *Thunder Bay River Booming Co. v. Speechly*, 31 Mich. 336, this Court held that the stream need not be capable of use for floatage at all seasons of the year, but that, if in its natural state periodically it was capable of such use at such times, it was a navigable stream. Under the principles laid down in *Moore v. Sanborne*, the State has developed, its material wealth has been advanced, and its prosperity greatly increased, and I see no good reason to narrow the scope of the decisions heretofore made.

The testimony in the case tended to show that Thread river was a navigable stream within the law as laid down by this Court; the whole testimony on that subject was submitted to the jury, and they found the fact to be, under the law, that the stream was navigable; and I do not see how we can overrule the jury upon this question of fact. Neither do I see how we can foretell whether or not needs of the public in the future may not arise to apply the Thread river to such use for floatage as its capacity may warrant.