## GEORGE A. BISSEL v. OLAF A. OLSON.

### (143 N. W. 340.)

**Stream — navigable — meandered — proof — burden.**

1. The burden is upon a party claiming a stream which has not been me- andered, nor declared navigable by the legislature, to be navigable, to prove it to be navigable in fact.

**Stream — tidewater — navigable — natural state — highway — transporta- tion — commerce.**

2. To constitute a stream, which is not tidewater, navigable, it must be nav- igable in fact in its natural state without aid of or reference to artificial

---

Note.—For a collection of authorities on the question what waters are navigable, see note in 42 L.R.A. 305. See also notes in 19 Am. St. Rep. 227 and 22 Am. St. Rep. 201.

On the question of the right of a landowner to accelerate flow of stream, see note in 85 Am. St. Rep. 708.

means, and be of sufficient capacity to render it capable of being used as a highway of commerce either in the transportation of the products of the mines, forests, or of the soil of the country through which it runs, or of passengers.

**Stream — public highway — volume of water — permanency.**

3. To render a stream navigable it must be capable of being used for a public highway a considerable part of the year, and it is not sufficient that it have an adequate volume of water therefor only occasionally as a result of freshets for brief periods of uncertain occurrence and duration.

**Public highway — stream — continuance — certainty — commercial value.**

4. A stream which is capable of being navigated, unaided by artificial means, during freshets or stages of water occurring frequently and at times of reasonable certainty, and continuing long enough to make its use of commercial value, is a public highway for that purpose.

**Navigable stream — capacity — increased — artificial means — injury — compensation — riparian proprietor.**

5. The capacity of a navigable stream cannot be increased by artificial means to the injury of a riparian proprietor, without compensation.

**Navigability — criterion — commerce — traffic — evidence — positive — negative — weight.**

6. The criterion by which the navigability of a stream is determined is not that it is not used for purposes of commerce and traffic, but that it is not capable of such use in its natural state; and the value of evidence showing that it is used for navigation rests upon the proposition that that fact proves it navigable; while evidence that it never has been so used is not of equal weight, yet it is entitled to great weight as tending to show that it is not capable of being navigated to advantage, when it is shown that the river flows through an inhabited country, with towns on its banks and commerce transacted between them.

**Evidence — burden of proof — navigable stream — conditions — times.**

7. This action was brought to enjoin defendant from maintaining a footbridge across the Mouse river near Minot, in Ward county, between his buildings and a part of his land on the other side of the river, and the court granted a preliminary injunction, from which this appeal is taken. The order appealed from also commands the destruction of the bridge within twenty-four hours if not removed by the defendant. The river is not meandered. The testimony of plaintiff and his witnesses, aside from their conclusions that the river is navigable, rests upon statements that about the 1st of October, 1911, a 16-foot launch traversed a distance of 24 miles above Minot without difficulty; that about eighteen years ago some piles for bridges were floated down the river from Minot. No date of this is given. That in September, 1906, a boat which drew 10 inches of water went down the river about 25 miles without difficulty, and about ten years ago a building was rafted down the river from a point

about 25 miles above the city of Minot; and that on the 7th of April, 1912, a boat drawing 8 inches of water passed down the river from a point in Renville county to the city of Minot, and that the witness could go down the river between Greene and Minot in an 18-foot launch, without stating the time of year when he could do so. *Held*, that under the rules above stated this evidence does not sustain the burden of proof resting upon the plaintiff, and prove the river navigable in fact, and particularly so in view of the testimony given by numerous well-known residents of the vicinity who had lived there from twenty-five to twenty-nine years, setting forth the conditions of the river at different stages of water. and testifying that it could not be navigated.

**Mistake of law — trial court — mandatory injunctional order — discretion — abuse.**

8. A mistake in law committed by the trial court in deciding an application of this kind, in particular when it results in a mandatory injunctional order for the destruction of property pending the trial of an action on its merits, is, in a legal sense, an abuse of discretion.

Opinion filed September 20, 1913.

Appeal from an order of the District Court for Ward County, *Leighton*, J.

Reversed.

## Statement of Facts.

This is an appeal from an order of the district court of Ward county, enjoining the defendant from maintaining a bridge across the Mouse river, a short distance northwest of the city of Minot, and directing the destruction of such bridge if not removed within twenty-four hours after the granting of the order. The order was made on a hearing, upon affidavits presented by both parties, immediately after the commencement of an action to permanently enjoin the maintenance of such bridge, and pending the trial of such action.

The Mouse river rises in the Dominion of Canada, and flows southeasterly through Ward county, North Dakota, and through the city of Minot to a point something like 30 miles southeast of said city, where it changes its course to northeasterly through McHenry county, and later northwesterly through a portion of McHenry county and across Bottineau county, back into Canada. At the point in question the

defendant owns land on both sides of the river. His residence is on one side, and, to reach his land on the other without the necessity of going some distance to a public bridge, he constructed a small suspension footbridge between his buildings and a 30-acre tract on the opposite side of the river. Some years ago the Great Northern and the Soo Railways constructed dams across the river below the point in question, to enable them to procure adequate supplies of water, and it is undisputed that one or both of those dams causes the water to set back some distance above defendant's bridge, and whatever the fact as to the navigability of the river may have been prior to the construction of these dams, it is now navigable above them for some distance, including the point in controversy. The river was not meandered when the adjoining lands were surveyed, but patents were issued to settlers, conveying the bed of the river.

Plaintiff had been engaged for some time in running launches on the river to carry parties from the city of Minot, through defendant's premises, to a pleasure park northwest of the city, and this bridge interferes with such business.

*Noble, Blood, & Adamson* for appellant.

Failure to prove that the stream obstructed, is navigable, deprives the plaintiff of right to injunctive relief or to damages. The stream must be navigable *in fact.* State ex rel. Guenther v. Charleston Light & Water Co. 68 S. C. 540, 47 S. E. 979; Smart v. Aroostook Lumber Co. 103 Me. 37, 14 L.R.A.(N.S.) 1083, 68 Atl. 527; Walker v. Allen, 72 Ala. 456; Sullivan v. Spotswood, 82 Ala. 163, 2 So. 716; Healy v. Joliet & C. R. Co. 2 Ill. App. 435; Com. v. Charlestown, 1 Pick. 180, 11 Am. Dec. 161; Rowe v. Granite Bridge Corp. 21 Pick. 344; Moore v. Sanborne, 2 Mich. 519, 59 Am. Dec. 209; Carter v. Thurston, 58 N. H. 104, 42 Am. Rep. 584; State v. Narrows Island Club, 100 N. C. 477, 6 Am. St. Rep. 618, 5 S. E. 411; Farmers' Co-op. Mfg. Co. v. Albemarle & R. R. Co. 117 N. C. 579, 29 L.R.A. 700, 53 Am. St. Rep. 606, 23 S. E. 43; State v. Twiford, 136 N. C. 603, 48 S. E. 586; Hickok v. Hine, 23 Ohio St. 523, 13 Am. Rep. 255; State v. Pacific Guano Co. 22 S. C. 50; Webster v. Harris, 111 Tenn. 668, 59 L.R.A. 324, 69 S. W. 782; The Daniel Ball, 10 Wall. 557, 19 L. ed. 999; The Montello, 11 Wall. 411, 20 L. ed. 191; Miller v. Enterprise

Canal & Land Co. 142 Cal. 208, 100 Am. St. Rep. 115, 75 Pac. 770; Goodwill v. Police Jury, 38 La. Ann. 752; Turner v. Holland, 65 Mich. 453, 33 N. W. 283; Southern R. Co. .v. Ferguson, 105 Tenn. 552, 80 Am. St. Rep. 908, 59 S. W. 343; Dawson v. McMillan, 34 Wash. 269, 75 Pac. 807; Baldwin v. Erie Shooting Club, 127 Mich. 659, 87 N. W. 59; Schulte v. Warren, 218 Ill. 108, 13 L.R.A.(N.S.) 745, 75 N. E. 783; Bayzer v. McMillan Mill Co. 105 Ala. 395, 53 Am. St. Rep. 133, 16 So. 923; Lewis v. Coffee County, 77 Ala. 190, 54 Am. Rep. 55; Burroughs v. Whitwam, 59 Mich. 279, 26 N. W. 491; Morgan v. King, 35 N. Y. 453, 91 Am. Dec. 58; Groton v. Hurlburt, 22 Conn. 178; Munson v. Hungerford, 6 Barb. 270; Tuscaloosa County v. Foster, 132 Ala. 392, 31 So. 589; Neaderhouser v. State, 28 Ind. 270; Leovy v. United States, 177 U. S. 621, 44 L. ed. 914, 20 Sup. Ct. Rep. 797; Kamm v. Normand, 50 Or. 9, 11 L.R.A. (N.S.) 290, 126 Am. St. Rep. 698, 91 Pac. 448.

The burden is upon plaintiff to show that the stream is navigable. Morrison Bros. v. Coleman, 87 Ala. 655, 5 L.R.A. 384, 6 So. 374; Allaby v. Mauston Electric Service Co. 135 Wis. 345, 16 L.R.A. (N.S.) 420, 116 N. W. 4; Clute v. Briggs, 22 Wis. 607.

The water of stream, to be navigable, must be so in its natural state, without the aid of any artificial means. Bayzer v. McMillan Mill Co. 105 Ala. 395, 53 Am. St. Rep. 133, 16 So. 923; Little Rock, M. R. & T. R. Co. v. Brooks, 39 Ark. 403, 43 Am. Rep. 277; Moore v. Sanborne, 2 Mich. 519, 59 Am. Dec. 209; East Branch Sturgeon River Improv. Co. v. White & F. Lumber Co. 69 Mich. 207, 37 N. W. 192; Curtis v. Keesler, 14 Barb. 511; Ten Eyck v. Warwick, 75 Hun, 562, 27 N. Y. Supp. 536; De Camp v. Thomson, 16 App. Div. 528, 44 N. Y. Supp. 1014; Kamm v. Normand, 50 Or. 9, 11 L.R.A.(N.S.) 290, 126 Am. St. Rep. 698, 91 Pac. 448; Webster v. Harris, 111 Tenn. 668, 59 L.R.A. 324, 69 S. W. 782; Griffith v. Holman, 23 Wash. 347, 54 L.R.A. 178, 83 Am. St. Rep. 821, 63 Pac. 239; East Hoquiam Boom & Logging Co. v. Neeson, 20 Wash. 142, 54 Pac. 1001; Gaston v. Mace, 33 W. Va. 14, 5 L.R.A. 392, 25 Am. St. Rep. 848, 10 S. E. 60; The Montello, 20 Wall. 430, 22 L. ed. 391.

The stream, not being meandered, makes it prima facie non-navigable. Morrison Bros. v. Coleman, 87 Ala. 655, 5 L.R.A. 384, 6.

So. 374; Allaby v. Mauston Electric Service Co. 135 Wis. 345, 16 L.R.A.(N.S.) 420, 116 N. W. 4.

Nor is it one declared by any act of the legislature to be a navigable stream. Clute v. Briggs, 22 Wis. 607.

An injunction issues during the litigation, usually, to keep the rights of the parties and the subject-matter *in statu quo.* An injunction which is in effect mandatory will not be granted *pendente lite,* except in rare cases. Way v. Hayes, 124 N. Y. Supp. 648; Maloney v. Katzenstein, 135 App. Div. 224, 120 N. Y. Supp. 418; Lehigh Valley R. Co. v. New York & N. J. Water Co. 76 N. J. Eq. 504, 74 Atl. 970; Gaslight Co. v. South River, 77 N. J. Eq. 487, 77 Atl. 473; Wright Co. v. Herring-Curtiss Co. 103 C. C. A. 31, 180 Fed. 110.

Even on final hearing, such an injunction will not be awarded unless it clearly appears that the stream obstructed is navigable. 29 Cyc. 323; State v. Carpenter, 68 Wis. 165, 60 Am. Rep. 848, 31 N. W. 730; Buffalo v. Delaware, L. & W. R. Co. 60 Misc. 584, 112 N. Y. Supp. 690.

Where the facts upon which the right to an injunction is based, are in dispute, one will not be granted. 16 Am. & Eng. Enc. Law 360; Post v. Young, 7 Kulp, 102; Roath v. Driscoll, 20 Conn. 539, 52 Am. Dec. 352; Chouteau v. Union R. & Transit Co. 22 Mo. App. 286; Swan v. Indianola, 142 Iowa, 731, 121 N. W. 547.

*W. F. Doherty,* for respondent.

Where an unauthorized obstruction has been erected in or over a navigable stream, a preliminary injunction may be granted before final determination. Kamm v. Normand, 50 Or. 9, 11 L.R.A.(N.S.) 290, 126 Am. St. Rep. 698, 91 Pac. 448; 29 Cyc. 322, note, 95.

Relief by mandatory injunction has been awarded *pendente lite,* in many cases involving questions similar to those here presented. 1 High, Inj. 4th ed. § 804; Dickson v. Dows, 11 N. D. 404, 92 N. W. 797; 2 High, Inj. 4th ed. § 1696.

If the injunction cannot prejudice defendant's rights, and its dissolution might seriously impair plaintiff's rights, the motion to dissolve should not prevail. 2 High, Inj. 4th ed. § 1511.

On motion to dissolve, if the evidence is evenly balanced, the injunction will be continued. 22 Cyc. 1000.

The finding of the court on the same question in another action may be considered on such motion. Barker v. Oswegatchie, 41 N. Y. S. R. 821, 16 N. Y. Supp. 727.

Matters occurring in the presence of the court, in a former action, may be considered on such motion. Howard v. Lowell Mach. Co. 75 Ga. 325.

Courts may take judicial notice of certain transactions and matters— and must do so in some cases. Rev. Codes, 1905, § 7318; Amundson v. Wilson, 11 N. D. 193, 91 N. W. 37.

But a criminal sentence is not evidence in civil cases. Black, Judgm. 2d ed. § 603.

SPALDING, Ch. J. Before considering the navigability of the stream, which is the question here involved, attention must be called to a few well-established principles.

1. When a stream claimed to be navigable is not meandered nor declared navigable by the legislature, it is presumed to be non-navigable, and the burden is upon the party claiming it to be navigable to show that it is so in fact. Morrison Bros. v. Coleman, 87 Ala. 655, 5 L.R.A. 384, 6 So. 374; Allaby v. Mauston Electric Service Co. 135 Wis. 345, 16 L.R.A.(N.S.) 420, 116 N. W. 4; Clute v. Briggs, 22 Wis. 607; Gaston v. Mace, 33 W. Va. 14, 5 L.R.A. 392, 25 Am. St. Rep. 848, 10 S. E. 60; Gwaltney v. Scottish Carolina Timber & Land Co. 111 N. C. 547, 16 S. E. 692; 1 Farnham, Waters, p. 126.

2. When a stream is not tide water (as in this case) it must be navigable in fact, in its natural state, without the aid of or reference to artificial means; and be of sufficient capacity to render it capable of being used as a highway of commerce, either in the transportation of the products of the mines, forests, or of the soil of the country through which it runs, or of passengers. Kamm v. Normand, 50 Or. 9, 11 L.R.A.(N.S.) 290, 126 Am. St. Rep. 698, 91 Pac. 448; The Daniel Ball, 10 Wall. 557, 19 L. ed. 999; The Montello, 11 Wall. 411, 20 L. ed. 191, 20 Wall. 430, 22 L. ed. 391; Lamprey v. State, 52 Minn. 181, 18 L.R.A. 670, 38 Am. St. Rep. 541, 53 N. W. 1139; United States v. Rio Grande Dam & Irrig. Co. 9 N. M. 292, 51 Pac. 674; Harrison v. Fite, 78 C. C. A. 447, 148 Fed. 781; East Hoquiam Boom & Logging Co. v. Neeson, 20 Wash. 142, 54 Pac. 1001.

3. It must be capable of being used for such purpose, that is, for a public highway, a considerable part of the year, and it is not sufficient that it have an adequate volume of water therefor only occasionally, as the result of freshets, for brief periods of uncertain recurrence and duration. Morrison Bros. v. Coleman, 87 Ala. 655, 5 L.R.A. 384, 6 So. 374; Kamm v. Normand, 50 Or. 9, 11 L.R.A.(N.S.) 290, 126 Am. St. Rep. 698, 91 Pac. 448; Toledo Liberal Shooting Co. v. Erie Shooting Club, 33 C. C. A. 233, 62 U. S. App. 644, 90 Fed. 680; Griffith v. Holman, 23 Wash. 347, 54 L.R.A. 178, 83 Am. St. Rep. 821, 63 Pac. 239; Wethersfield v. Humphrey, 20 Conn. 218; Cardwell v. Sacramento County, 79 Cal. 347, 21 Pac. 763; Munson v. Hungerford, 6 Barb. 265; Rowe v. Granite Bridge Corp. 21 Pick. 344; People ex rel. Ricks Water Co. v. Elk River Mill & Lumber Co. 107 Cal. 221, 48 Am. St. Rep. 125, 40 Pac. 531; Cue v. Breeland, 78 Miss. 864, 29 So. 850; Farmers' Co-op. Mfg. Co. v. Albemarle & R. R. Co. 117 N. C. 579, 29 L.R.A. 700, 53 Am. St. Rep. 606, 23 S. E. 43; Little Rock, M. R. & T. R. Co. v. Brooks, 39 Ark. 403, 43 Am. Rep. 277; Hot Springs Lumber & Mfg. Co. v. Revercomb, 106 Va. 176, 9 L.R.A.(N.S.) 894, 55 S. E. 580; Bayzer v. McMillan Mill Co. 105 Ala. 395, 53 Am. St. Rep. 133, 16 So. 923.

4. A stream which is capable of being navigated, unaided by artificial means, during freshets or stages of water occurring frequently and at times of reasonable certainty, and continuing long enough to make its use of commercial value, is a public highway for that purpose. Kamm v. Normand, 50 Or. 9, 11 L.R.A.(N.S.) 290, 126 Am. St. Rep. 698, 91 Pac. 448.

5. As bearing on the subject before us, it may be asserted that the capacity of a navigable stream cannot be increased by artificial means to the injury of a riparian proprietor, without compensation. Ibid.; Morgan v. King, 35 N. Y. 460, 91 Am. Dec. 58; Monroe Mill Co. v. Menzel, 35 Wash. 487, 70 L.R.A. 272, 102 Am. St. Rep. 905, 77 Pac. 813; Thunder Bay River Boom. Co. v. Speechly, 31 Mich. 336, 18 Am. Rep. 184; Koopman v. Blodgett, 70 Mich. 610, 14 Am. St. Rep. 527, 38 N. W. 649.

In the Thunder Bay Case, Judge Cooley, speaking for the supreme court of Michigan, says: "During that time the public right of floatage and the private right of the riparian proprietors must each be exercised

with due consideration for the other, and any injury which the latter receives in consequence of a proper use of the stream for floatage he must submit to as incident to his situation upon navigable waters. Middleton v. Flat River Boom Co. 27 Mich. 533. But at periods when there is no highway at all, there is no ground for asserting a right to create a highway by means which appropriate or destroy private rights. The doctrine that this may be done without compensation to parties injured is at war with all our ideas of property and of constitutional rights. The most that can be said of this stream during the seasons of low water is that it is capable of being made occasionally navigable by appropriating, for the purpose, the water to the natural flow of which the riparian proprietors are entitled. It is highly probable, in view of the large interests which are concerned in the floatage, that the general public good would be subserved by so doing; but this fact can have no bearing upon the legal question. It is often the case that the public good would be subserved by forcing a public way through private possessions; but it neither should be nor can be done under any circumstances without observing the only condition on which it can be permitted in constitutional government; namely, that the private proprietor be compensated for the value which he surrenders to the public. . . . As was remarked in Morgan v. King, 35 N. Y. 460, 91 Am. Dec. 58, the question of public right in a case like this is to be decided without reference to the effect which artificial improvements have had in the navigable capacity of the river; in other words, the public right is measured by the capacity of the stream for valuable public use in its natural condition, and any attempt to create capacity at other times at the expense of private interests can be justified only on an assessment and payment of compensation."

Those Maine, Minnesota, and Wisconsin authorities which rest upon statutes of those states authorizing the construction of dams to facilitate the floating of logs or the navigation of streams have no application to this case, as we have no such statute.

6. Having, from the authorities, reached the conclusion that the presumption is that the river is non-navigable, that the stream must be navigable in its natural state, that "navigable" means capable of being navigated during a considerable portion of the year, and not simply on the happening of floods at uncertain periods, we will now examine

the evidence to ascertain whether, under the law, the plaintiff, on the hearing and the entry of the order appealed from, overcame the presumption and made out a case which justified the court in holding the Mouse river navigable. In nearly all the affidavits submitted by the respective parties, it is stated as a conclusion, either that the river is navigable or non-navigable in its natural state at the point where defendant's bridge was maintained, and in that vicinity, but most of the witnesses further gave their reasons for their conclusions. Hence we attach but little weight to the conclusions of those witnesses whose testimony is not supported by the facts which they state. In support of the order the plaintiff submitted affidavits made by himself, stating that he had been engaged in operating gasolene motor boats upon the Mouse river for a distance of about 12 miles; that the obstruction complained of was about 5 miles from the lower end of his route, and prevented him going up the river past the same with his boats; that such obstruction existed during the month of July, 1912; an affidavit of Claude Sipple, who testified that about the 1st of October, 1911, he went up the Mouse river about 24 miles above the city of Minot, in a gasolene launch 16 feet in length and about 5 feet wide and which drew between 14 and 16 inches of water; that such launch on said trip carried two people and about a hundred pounds of freight, and that he experienced no difficulty or trouble in making such trip, or the return trip which he made, on account of the waters of said river being shallow; that he is acquainted with the Mouse river in the county of Ward, and knows that logs can be floated down the same, and that boats can navigate the same, and that it has been navigated by boats during the past five years; an affidavit of George Ehr, testifying that he had lived in Ward county twenty-three years; that about eighteen years ago the Soo Railway floated piles for bridges below Minot, down the river, some of them a distance of about 25 miles, having placed such piling in the river at about the point where one of the railroad dams is now constructed; that in the month of September, 1906, he went down said river in a boat to the city of Sawyer, about 25 miles; that such boat was loaded with about 800 pounds of freight, and drew 10 inches or more of water; that at no place did he encounter shallow water, or experience difficulty in making his trip by reason of shallow water, or remove the freight from his boat to enable it to go around

any place in the river; that about ten years ago a two-story building, 24 feet in width by 28 feet in length, was rafted down the river about 25 miles to a point in the city of Minot; that said river has been navigated in the past by boats and is being navigated by the plaintiff as alleged in his affidavit.

An affidavit of Clayton Younkins, stating that on the 7th of April, 1912, he went from the village of Greene, in Renville county, down the river to the city of Minot in a boat, 17 feet long and 4 feet wide, loaded with about 550 pounds of freight, and three people; that the boat drew, when loaded, about 8 inches of water; that the distance covered was about 125 miles via the river; and that he experienced no difficulty on account of the river being shallow, turbulent, or rough or on account of artificial obstructions; that at times when in the center of the channel he tried to reach the bottom of the river with a 6-foot oar, but was unable to do so; that the river between said points flows in a well-defined channel between natural banks; that he can go up and down the river between Minot and Greene in an 18-foot launch and intends to do so next year.

An affidavit of one McCutcheon, that gasolene launches run on the river about 40 miles east of Minot at the city of Towner; that near the city of Russell, in Bottineau county, there was a flat-bottomed boat which carried 12 horses and four loaded wagons across said river at one time for a distance of about three fourths of a mile; that at another time it carried 40 head of cattle for a distance of 6 miles on said river, and could have gone 50 miles up or down the river.

This is the extent of the showing made by the plaintiff as to the navigability of the river, other than the assertions in each of the affidavits that it is navigable. For the purposes of this case we may eliminate all reference to the condition of the river at points a considerable distance below Minot. It must be, by the river channel, 100 or 150 miles to Russell, probably more than that by reason of the tortuous course of the river; hence it may be easily navigable at that point, and totally incapable of navigation at Minot and above.

The defendant testified as to the location of his land with reference to his buildings and the bridge, and that he had resided in said place, a few rods from the bank of the river, twenty-nine years, and knew, of his own knowledge and observation, that said river was not suitable

for navigation of boats for any purpose at the ordinary stage of the water, and was not a navigable stream; that the only place where it could be navigated at that time was on the backwater from the temporary dam of the Great Northern Railway, in the city of Minot, and that said dam raised the water of said river about 7 feet; that if such dam were removed the portion of the river covered by the artificial pond formed by it would not be navigable; that during the past twenty-nine years said river has never been navigated by boats for any purpose whatsoever, except that part of it covered by the artificial pond referred to; that during that time the country adjoining the entire course of said river has been transformed from a wilderness to a well-settled farming community, with many towns and trading places along the river, including the city of Minot with a population of at least 7,000 people, and that during none of the time had any carrying of any description whatsoever, either of freight, the products of the farm or mines or of the country, or of passengers, been done on said river, and that it had been used as a highway of commerce in no way whatsoever; that the counties and townships along the line of the river have constructed various bridges across said river which would stop the passage of boats if said river were navigable; that the farmers along its course had constructed wire fences and dams, all of which had been maintained for years; that the dams of the two railway companies in the city of Minot rendered it impossible to pass up or down said river from such city with boats of any kind, and that said city had constructed sewers above the water line of said river, supported on concrete foundations, absolutely obstructing the passage of boats up or down the river; that said railway companies had constructed various bridges across said river, which would obstruct the passage of boats if the river were navigable; that such bridges and obstructions had been maintained for years and were being kept and maintained without objection on the part of any one; and that said river, to his own personal knowledge, never had been and could not be made useful as a highway of commerce; that the carrying of passengers by plaintiff had been made possible only by the construction of the dam of the Great Northern Railway at Minot; that plaintiff had been landing passengers upon defendant's land, and that such passengers have trespassed thereon, destroyed trees, caused damage to his lands, and had

been an annoyance and a nuisance to him.    He also presented other affidavits.

John Wallin testified that he had resided twenty-nine years within 3 or 4 rods of the river, and had actual knowledge of the condition of water in said river during all that time; that he had seen it when it was very greatly swollen with freshets, and at other times when at places the water did not run; that during the summer of 1910 the river was practically dry in places; that the ordinary stage of water did not furnish sufficient depth and volume to enable boats of any description to pass over, not even a skiff operated by oars; that on his farm, across which the river flowed, were rapids and shallows across which he had passed without getting his feet wet, by stepping on the stones; that at the time of the trial the stage of water was as high or higher than its ordinary stage; that there was no regular rise and fall in said river, but that the height and volume of water was dependent upon and varied according to the rain and snow fall; that the river could not be depended upon in any portion of the year to furnish water in sufficient volume and depth for the passage of boats of any description; that there were rapids and shallows at various places, both above and below Minot, similar to the one on his premises, which obstructed the passage of boats of any kind in the ordinary stage of water; that it never had been used as a highway for commerce or for carrying passengers, and that were it not for the artificial pond before referred to plaintiff could not operate his boats; that he had kept and maintained wire fences across the river and that no complaint had ever been made as to them or the various obstructions placed by farmers, counties, towns, and railways along said river, with the exception of the complaint made by plaintiff against defendant; that he had seen the river prior to the construction of the dams referred to; that in its natural state it would, in places, be too shallow for plaintiff's boats.

Peter Ehr testified in the main to the same effect as John Wallin, and that he had been acquainted with the river for twenty-five years; that on it there were rapids and shallows where the water was so shallow as to render the passage of boats impossible, even a skiff operated by oars in the hands of an oarsman; that although at the time of the trial the stage of the water was rather above the average, it did not exceed 4 inches in depth over such shallows and rapids; that the natural

obstructions in the river rendered the passage of boats of any size up and down said river at the ordinary stage of the water an impossibility; that it could not be used, in an ordinary stage of the water, in any manner whatsoever as a highway of commerce; that there was no regular rise and fall of the water in said river with the seasons, but that the depth depended upon the rain fall in the portion of the country along the river.

James Johnson testified that he had lived along the river, west of the city of Minot, for a period of twenty-nine years, and testified as to dams, fences, bridges, sewers, and other obstructions constructed on the river preventing navigation; that in ordinary stages of the water the river is so shallow as to prevent the passage of boats of any kind; that the natural obstructions completely obstruct the passage of boats up and down the river; that the running of boats past defendant's premises is only made possible by reason of the artificial pond caused by the back water from the railroad dam; that the river does not have any particular rise and fall recurring with the seasons, but that the volume of water varies with the climatic conditions and is dependent upon the precipitation, and that such river could not be depended upon to furnish sufficient volume of water for navigation by boats in its natural state at any season of the year; that he had seen it dry, with no water in it at all, and that it was practically dry during the summer of 1911.

The affidavit of Edward Kittleson, another twenty-nine-year resident, was to the same effect, and that said river never had been and never would be, in its natural state, a highway of commerce for the communities living along its banks; that if the footbridge complained of were removed, the river could not be navigated above the backwater referred to, as obstructions both above and below would prevent the passage of boats up and down the river.

Joseph Roach was another witness, who testified that the river could not be navigated except for the artificial pond referred to; and that there was no periodical rise and fall of the river, recurring with the seasons; and that the river could not be depended upon, except for such artificial means, to furnish sufficient water for navigation for boats of any description at any time of the year.

John Ehr testified much to the same effect.

The authorities are not altogether agreed as to the exact extent to

which a stream must be navigable to make it navigable in fact and law. Some hold that the fact that it may be capable of use for hunting and pleasure boating is insufficient, while others hold that any substantial capacity for use in those respects renders it navigable. The criterion, at all events, is not that it is not used for purposes of commerce and traffic, but that it is capable of such use. United States v. The Montello, 20 Wall. 430, 22 L. ed. 391.

The value of evidence as to the fact of its being used rests on the proposition that such fact proves it navigable. Gaston v. Mace, 33 W. Va. 14, 5 L.R.A. 392, 25 Am. St. Rep. 848, 10 S. E. 60. While the fact that it has never been so used is not of equal weight in proving that it is not navigable, but in an inhabited country, with towns along the river, and commerce being transacted between such towns, the fact that it has never been used to any extent for navigation is entitled to great weight as evidence that it is not capable of being navigated to advantage. 1 Farnham, Waters, 125; Burroughs v. Whitwam, 59 Mich. 279, 26 N. W. 491.

We apprehend that each case must stand upon its own facts. It would be unjust to the riparian owners to hold a small brook, which, during the melting of the snow in the spring, may be capable of navigation by a skiff with oars for a few days, but which no one would ever consider using as a regular line of communication or transportation, as a navigable stream. The benefits to be derived from such brief and trifling use would be wholly incommensurate with the damage and detriment occasioned by so holding to the owners of the adjoining land and of the bed of the stream. Going a step further, it would work a hardship only in a less degree to hold a small stream navigable on which boats can be propelled only at times of heavy rain storms, occurring with great irregularity, and not at seasons which can be in any degree depended upon. People will not regard as navigable a stream on which no dependence can be placed. If it might be navigated to a slight extent in April one year and perhaps not until July the next year, and perhaps not until October the next, it is self-evident that it would be incapable of navigation in any dependable degree. Capacity for a few days at a time is not enough. East Branch Sturgeon River Improv. Co. v. White & F. Lumber Co. 69 Mich. 207, 37 N. W. 192.

The testimony of the plaintiff and of his witnesses amounts only to

a statement of the fact that about the 1st of October, 1911, one party navigated the river in a 16-foot launch for a distance of 24 miles above Minot without difficulty, and of another that about eighteen years ago the Soo Railway Company floated some piles for bridges down the river below Minot. He does not state the time of year when this was done, but it is stated that in the month of September, 1906, he went down the river in a boat which drew 10 inches of water, about 25 miles, without difficulty; and that about ten years ago a building was rafted down the river from a point 25 miles above the city of Minot. Another witness testifies that on the 7th of April, 1912, he went from the village of Greene, in Renville county, to the city of Minot, in a boat drawing 8 inches of water, without difficulty, and that the river runs between stated points in a well-defined channel; and that he can go down the river between Minot and Greene in an 18-foot launch. We do not know what time of year this applies to, but, if at the time of the hearing of this application, the record shows the river to be above the ordinary stage of water. His testimony as to the running of launches and ferries, etc., at Towner and in Bottineau county, is not material, as the distance below Minot and the increase in the volume of the river are too great to prove that it is navigable at Minot.

It will thus be seen that, after giving a most liberal construction to the evidence submitted by plaintiff, he has not overcome the presumption against him by showing the river navigable the greater part, or even a considerable part, of the year. He has only shown that it has been navigated in a sense at certain specified dates, without showing the condition of the river on those dates, although, when read in the light of the testimony of the witnesses for the defendant, it is apparent that on the dates mentioned the river must have been swollen by freshets of some origin far beyond its ordinary stage. Had he shown that it was navigable for periods of some days on the occasion of freshets which were reasonably certain of stated recurrence, or which could be depended on with any considerable degree of certainty, the case might be different. The witnesses of defendant are men who are among the oldest and best-known inhabitants of the county, and who have observed the river for many years, both before and since the artificial pond used by the plaintiff was constructed, and even though plaintiff had made out a prima facie case, in the light of the testimony of the defendant's

witnesses the evidence against the navigability of the stream preponderates over that in favor of its being navigable.

7. This appeal was only argued for plaintiff by counsel appearing *amicus curiæ,* and he submits no extended brief on the merits, but seems to rest his contention upon the lower court having exercised its discretion in granting this temporary restraining order, which also commands the destruction of the bridge. We should be disposed to go some ways to sustain the action of the lower court in a matter largely within its discretion, had it not entered a mandatory order destroying the property of the defendant before the trial of the action upon the merits, or in case of grave doubt on the showing made. It should be borne in mind that we determine this appeal upon the same evidence submitted in the district court. This evidence was all in the form of affidavits. The trial court had no greater opportunity to judge of the truthfulness of witnesses than has this court; and if that court made a mistake in law, then it abused its discretion in a legal sense, and, as indicated, we are satisfied, after a careful review of authorities, that the learned judge of the district court was mistaken in his application of the law to the facts shown on the hearing. It should be a strong case which warrants the trial court in granting a mandatory injunctional order for the destruction of property pending the trial of an action upon its merits. It should not be done when there is room for grave doubt on the merits of the action. High, Inj. §§ 732–734. Abuse of discretion in such case occurs when an error in law is committed by the trial court. 2 High, Inj. § 1696.

8. It appears that a few days before the commencement of this action the defendant was tried in the district court of Ward county on an information charging him with obstructing a navigable stream at the same place, and found guilty and sentence imposed. From a judgment entered in such criminal action an appeal is now pending in this court. The plaintiff asked the trial court, on the hearing in this case, to take judicial notice of the record and proceedings in the criminal case, and the defendant has joined in the request of the plaintiff that this court also take such notice. We shall not take the time to determine what our duties are in the premises. The rules of evidence in the two cases under our statute differ widely, and it would be a dangerous precedent to say that the evidence received in a criminal

case, where much evidence offered was excluded and numerous answers. received over objection, and where exceptions were taken to various parts of the charge to the jury, should be read and considered by this court in a case where, on trial, all evidence offered is received and transmitted on appeal to this court. We content ourselves with saying that we have carefully read the record in the criminal case, and that in our opinion it does not strengthen the showing made by the respondent on the application for the order appealed from.

This suit was apparently commenced, and the hearing had, with no very clear conception of the legal rights of the parties, and perhaps with the belief, on the part of plaintiff, that the navigability of the river should be determined on its capacity as fixed by the artificial structures now existing, and as a result several points material to his case were overlooked in attempting to make proof. These may be supplied on a trial on the merits.

We may also explain that many authorities cited relate to the capacity of streams to float logs and lumber. The principles applicable in the cases involving navigability, and those relating to floatability, are the same; but we think that in fact it is possible for a non-navigable river to be floatable. Assuming this difference to exist does not, however, differentiate the rules applicable to a determination of either question. The floatability of the Mouse river is not likely to become a question for the courts, as it does not flow through a timbered country.

The order of the trial court is vacated, and appellant will recover his costs.

Goss, J., being disqualified, did not participate in the above decision.