[No. 14887.   Department One.   December 28, 1918.]

DRAINAGE DISTRICT No. 3 OF KING COUNTY *et al.*, *Respondents*, v. MACHIAS MILL COMPANY, *Appellant.*[1]

LOGS AND LOGGING (5)—DRIVING AND FLOATING LOGS—RIGHT TO USE STREAM—EFFECT ON DRAINAGE. Where a stream, which has been improved by a drainage district, had been capable, during the annual periods of high water, of being profitably used for floating logs and timber products to market, the drainage commissioners are not entitled to an injunction against the use of the stream and banks for continuous floatage of logs by natural methods, even if objectionable to riparian rights; but only to relief against such holding, storing and accumulation of logs and timber products as will interfere with the fitness of the stream for drainage purposes by the silting of the channel and causing bars not due to natural conditions.

Appeal from a judgment of the superior court for King county, Jurey, J., entered November 14, 1917, in favor of the plaintiffs, in an action for an injunction, tried to the court. Modified.

[1]Reported in 177 Pac. 326.

*Weter & Roberts,* for appellant.
*Shorett, McLaren & Shorett,* for respondents.

MACKINTOSH, J.—The plaintiffs, as drainage district commissioners, seek to enjoin the defendant from the use of a drainage channel in connection with its logging operations in such way as to interfere with the channel as a drainage way.

The Sammamish river flows from Lake Sammamish to Lake Washington, and in its natural channel was a long, tortuous, sluggish stream which was used to some extent in early days by small boats and for the driving of logs. The river in its natural course, not furnishing sufficient drainage for the surrounding lands, was straightened and deepened under authority by drainage district No. 3, created for that purpose.

The drainage channel suffers from accumulations of silt into bars. The plaintiffs claim that these accumulations are accelerated in the summer time by jams of defendant's logs created when the water is low, which lessens the capacity of the channel in the winter when its entire capacity is necessary to drain the territory it was created to serve.

The trial court made this decree:

"Ordered, adjudged and decreed that the defendant, and each of its servants, agents, employees and officers be, and they are hereby restrained and enjoined from in any manner using the bed, channel or banks of the drainage system of said district as a place of storing, holding, retaining, or accumulating saw logs or other timber products, or from in any manner using any part of said drainage channel as a reservoir or a place of holding, storing, retaining, or accumulating logs or other timber products, or from in any manner holding, storing, or accumulating logs or other timber products in said channel in such a

manner as to back or raise the waters in said channel so as to interfere with its fitness as a drainage channel for the lands included in said drainage district.

"It is further ordered, adjudged and decreed that the defendant and each of its officers, agents, servants or employees be, and they are hereby enjoined from going upon the banks of said drainage channel in connection with any of its logging operations, and enjoined from attaching or fastening logs to said banks or bed of said channel for the purpose of forming what are called wing dams, or other artificial aids, so as to enable the same to be used by the defendant as a means of transporting such timber products.

"It is further ordered, adjudged and decreed that the defendant be, and is hereby ordered and required to remove from said drainage channel all logs or other artificial aids which it may have attached to the banks of said drainage channel or which may be attached to the banks or beds, and any and all logs now along or being thereon or therein; and that said removal be had forthwith, except, however, that as to certain large logs which are attached to the banks of said channel the defendant be, and it is hereby given up to and including January 1, 1918, for the removal of any such large logs, which, on account of their size, cannot be practically removed down stream earlier than December 1st.

"It is further ordered, adjudged and decreed that this decree shall not be taken or construed to prevent the defendant from using said channel for the purpose of towing logs, in a reasonable manner, at such seasons as the depth of water in said channel may permit of such towing; nor shall this decree be construed to prevent defendant from driving logs down said channel, provided that the same is done at such seasons as the depth of water will permit to be done without the employment of any artificial aids or means of assistance; and provided further that the same said driving of logs must be done by keeping said logs continuously in motion and without permitting the same to become stranded or accumulated at any place along said channel, it being the intention hereof that the de-

fendant shall be permitted to use said stream for floating or towing logs only to the extent that the same can be carried on without the use of any artificial aids whatever.''

The plaintiffs assert that ''the case involves the old question of the relative rights of the logger and the riparian owners, plaintiffs, of course, representing the property and property owners who are included in and benefited by, and have had to pay for, the drainage improvement in question.'' As we view it, the controversy does not involve nearly as much as here asserted. By neither the authority vested in the plaintiffs nor by their complaint are they entitled to assert the rights of the riparian owners. Their only interest in the stream is as drainage commissioners who are protecting it from being used in such way as to lessen its usefulness as a drainage way. They have no interest in any interference that the defendant may be imposing upon the riparian owners, unless such interference results in the injury alleged in the complaint, which is that the defendant allows logs to collect in the channel in such way as to cause rapid accumulation of sediment, thus forming bars so as to destroy its usefulness. With this clearly in mind, it is apparent that the decree as entered is broader than justified by the plaintiffs' authority or by their complaint.

That the defendant had a right to the use of the channel for the driving of logs cannot be gainsaid—the stream in its natural course was navigable under the testimony as we read it and under the law.

In Farnham on Waters and Water Rights, at § 25:

''Water Capable of Floating Logs. Streams which are capable of floating to market the products of the soil along their banks are navigable within the rule subjecting navigable streams to public use. The pub-

lic have a right of way in every stream which is capable, in its natural state and its ordinary volume of water, of transporting in a condition fit for market the products of the forests or mines, or tillage of the soil upon its banks. It is not essential that the property to be transported shall be carried in vessels or be guided by the hand of man, if it can be safely carried without such guidance. Nor is it necessary that the stream shall be capable of navigation against its current. Nor shall it be navigable at all seasons of the year, it being sufficient that it become navigable periodically from natural causes. But in order to come within the rule the stream must be actually capable of some profitable use. The capacity as shown by the use to which it is put is the true criterion by which to judge the question of navigability. It is sufficient if it is capable of floating vessels, boats, or other craft, or rafts of logs, or logs in quantities to make it of commercial value. The fact that the logs must be floated without being formed into rafts is not sufficient to destroy its navigable character; but the width of the stream may diminish to such an extent that such a stream would be of no commercial value because of the cost in time and labor in getting quantities of logs through it and destroy its usefulness. Such streams are not subject to public use. If the stream is capable of floating to a profitable extent it is navigable, and a public highway. The stream must, however, be capable of such use in its natural state, for it is not subject to public use if improvement is necessary to fit it for such use. Most streams fluctuate in capacity, containing considerable water during the season of melting snow and frequent fall of rains, and in periods of droughts becoming in some instances almost dry. The fact that in the dry season the stream is not capable of use will not prevent its being used at other times when it is capable of it. But the period of capacity must be sufficiently regular and continued to make the stream of commercial importance. The stream may be used whenever its capacity is sufficient for that purpose. If the stream cannot be used without traveling along the banks to

aid the passage of the logs it is not a navigable stream. But if the general character of the stream is such that it will float logs without aid from the banks the mere fact that persons using it find it convenient to go upon the banks, and, in fact, do so, will not destroy the navigable character of the stream.''

In *Monroe Mill Co. v. Menzel*, 35 Wash. 487, 77 Pac. 813, 102 Am. St. 905, 70 L. R. A. 272:

''The reasons leading to the holding in this state and others, where the timber industry is important, that streams which are navigable in fact for the floatage of timber to market shall be public highways for that purpose are founded upon commercial convenience and necessity because of the environment of the industry. Much of the timber grows in the mountains, also upon the foothills, and in other localities which are inaccessible by means of transportation facilities, without great expense. Nature has, however, provided numerous streams which flow out from these timber centers, and which are available highways for the carriage of the timber to market. In a locality so situated, it seems reasonable that these highways should be used for such purposes. It is true, the majority of these streams, being unmeandered, pass over private property, and their beds are owned by the adjacent landowner. But the lands are naturally burdened, if it be a burden, by the streams themselves, with their defined banks and flowing water, and it is not an additional burden to the landowner 'for the timber product to float along with the already running water, provided it is so done as not to damage his land. His rights in the latter particular must, however, be strictly and carefully guarded.''

After improvement it was still navigable and could be used by the public as theretofore. In Gould on Waters (2d ed.), at §§ 110, 111:

''In streams which are only floatable, the riparian owner is only bound not to obstruct its reasonable use for that purpose. His obligation to supply reason-

able facilities for the passage of logs does not extend to the passage of rafts of considerable size. If he obstructs the stream by making a new channel into which its waters are turned, the public may use it for floating logs and rafts as they had been accustomed to use the old channel, the right of passage applying to the natural flow of the stream or its equivalent; and if the new channel becomes obstructed, they may effect a suitable passage over the former channel, causing no unnecessary damage thereby.

"If the natural navigation of the river affords a channel for useful commerce, it continues to be navigable and open to the public although the natural barriers which render its navigation difficult are afterwards removed by artificial means, such as locks, canals and dams. If the navigation of a river which was originally navigable in fact, to a greater or less extent, be improved by the act of the riparian owners in deepening the channel, the public have the right to use it for all purposes to which it is suited in its improved condition."

The only matter remaining for determination is whether, as a matter of fact, the defendant, in the use it is making of the channel, is interfering with the drainage, not whether the defendant may be interfering with the rights of some riparian owner by going upon the banks to break up jams or to attach wing dams, etc. The authorities cited by the plaintiffs, holding that the defendant would not be allowed to do these and similar acts might be instructive were this an action brought by a riparian owner to enjoin the invasion of his rights.

A painstaking review of the testimony and exhibits, a resume of which would needlessly expand this opinion, convinces us that the use being made of the channel by the defendant is not interfering with its value for drainage, but that the silting of the channel is a condition due to the natural perversity of the river

itself and its tributaries, accentuated perhaps by the alterations performed by the plaintiffs themselves.

The decree as entered will be modified by striking therefrom all of it except the following:

"Ordered, adjudged and decreed that the defendant, and each of its servants, agents, employees and officers be, and they are hereby restrained and enjoined from in any manner holding, storing, or accumulating logs or other timber products in said channel in such a manner as to back or raise the waters in said channel so as to interfere with its fitness as a drainage channel for the lands included in said drainage district.

"It is further ordered, adjudged and decreed that this decree shall not be taken or construed to prevent the defendant from using said channel for the purpose of towing logs, in a reasonable manner, at such seasons as the depth of water in said channel may permit of such towing; nor shall this decree be construed to prevent defendant from driving logs down said channel, provided that the same is done at such seasons as the depth of water will permit to be done; and provided further that the same said driving of logs must be done by keeping said logs continuously in motion and without permitting the same to become stranded or accumulated at any place along said channel."

MAIN, C. J., TOLMAN, CHADWICK, and MITCHELL, JJ., concur.